Robert S. BOIT, et al., Plaintiffs,
Appellants,

v.

GAR–TEC PRODUCTS, INC.,
Defendant, Appellee.

No. 91–2179.

United States Court of Appeals,
First Circuit.

Heard April 10, 1992.

Decided June 5, 1992.

John B. Lucy with whom Richardson & Troubh, Portland, Me., were on brief, for defendant, appellee.

Harold J. Friedman, Karen Frink Wolf, and Friedman & Babcock, Portland, Me., on brief, for third-party defendant.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and KEETON,* District Judge.

KEETON, District Judge.

Plaintiffs-appellants Robert and Agnes Boit ("Boits") filed a product liability complaint against appellee-defendant Gar–Tec Products, Inc. ("Gar–Tec"), an Indiana corporation, in November of 1990. Gar–Tec subsequently removed the action to the United States District Court for the District of Maine. On March 1, 1991, Gar–Tec moved to dismiss the complaint against it for lack of *in personam* jurisdiction. The district court allowed the motion on the ground that the Boits failed to make a *prima facie* showing that Gar–Tec is subject to jurisdiction under the Maine long-arm statute. We affirm.

## I. Background

On August 27, 1987, William Babson, a contractor, used an electric hot air gun to strip paint from the exterior clapboards of the Boits' home in Blue Hill, Maine. The Boits allege that heat from the hot air gun penetrated the exterior wall of their home and ignited materials inside the wall, causing a fire that seriously damaged their home and belongings.

In support of its motion to dismiss, Gar–Tec submitted the affidavit of Judith Duran, Gar–Tec's Controller. She declared that Gar–Tec is an Indiana corporation with a principal place of business in Lowell, Indiana and is a wholesaler and importer of power tools and products, primarily saw chain products. In addition, she stated that Gar–Tec had never conducted or transacted any business in Maine, had never owned or operated any wholesale or retail sales outlets in Maine, had never advertised in Maine, had never employed any persons

Gail Fisk Malone with whom David C. King and Rudman & Winchell, Bangor, Me., were on brief, for plaintiffs, appellants.

* Of the District of Massachusetts, sitting by designation.

in Maine, and had never owned any real estate or other property in Maine. Duran further stated that Gar–Tec did not manufacture the hot air gun used by Babson; rather the gun was manufactured by Kress Elektrik G.M.B.H. of Germany.

In opposing Gar–Tec's motion to dismiss, the Boits submitted the deposition of Babson, the contractor. He testified that after receiving a Brookstone catalog at his home in Maine, he placed a written order with Brookstone for the hot air gun that is the subject of the Boits' complaint. Brookstone subsequently shipped the hot air gun to Babson through the mail. Babson also testified that the hot air gun was labelled "Gar–Tec" and that the box in which the gun was shipped contained an operator's manual that bore the word "Gar–Tec" in one-inch high letters. In addition, the manual stated that warranty service is available by "contacting" Gar–Tec at its Lowell, Indiana address.

The Boits also submitted the affidavit of their counsel.[1] The attorney attested that Brookstone, a specialty tool company, has a retail outlet in Maine and that she had personally received Brookstone mail order catalogs delivered to her through the postal service at her home in Bangor, Maine.

The district court referred Gar–Tec's motion to dismiss to a magistrate judge for a recommendation. On August 6, 1991, the magistrate judge issued a decision recommending that Gar–Tec's motion to dismiss be allowed. After reviewing the affidavits of the parties, the magistrate judge concluded:

> Based on these facts, I cannot find the requisite minimum contacts necessary to sustain personal jurisdiction over the defendant. Despite the plaintiffs' allegations, the motion record *does not contain any information of evidentiary quality* establishing that the defendant sold and distributed the hot air gun at issue to Brookstone or that the gun was purchased from Brookstone by mail and shipped by it into Maine.

Recommended Decision on Motion to Dismiss at p. 3 (emphasis added). After making a nondeferential (*de novo*) determination of all matters addressed by the magistrate judge, the district court entered an order allowing Gar–Tec's motion to dismiss "for the reasons set forth in [the magistrate judge's] Recommended Decision." Final judgment was entered forthwith, and this appeal followed.

## II.  Legal Standards and Methods of Adjudication

When a defendant presents to a district court a motion to dismiss for lack of *in personam* jurisdiction, the court may proceed to adjudication by one or another among several different methods. The different methods involve application by the district court of different legal standards. The standard of appellate review—whether deferential (under either the "clearly erroneous" or "abuse of discretion" standard) or nondeferential (under the *"de novo"* standard) depends in part on which method for determining the motion to dismiss the district court used and the nature of the proceedings before the court. The proceedings may involve proffers of evidence by affidavits (with or without opportunity for cross-examination), depositions, answers to interrogatories, admissions, authenticated documents, or oral testimony before the court.

Under every method for determining a motion to dismiss for lack of *in personam* jurisdiction, and regardless of the nature of

---

**1.** As a preliminary matter we note our concern with counsel's decision to make herself a potential witness in pretrial proceedings. Counsel's affidavit attested to facts she believed to be directly relevant to the issue of personal jurisdiction. Counsel thus made herself a witness for her client. An attorney who becomes a witness in trial or pretrial proceedings may be required to withdraw from further representation in the case. *Cf.* ABA Model Code of Professional Responsibility DR 5–102(A); D. Me. R. 25. If there is a genuine dispute about facts to which an attorney attests or testifies, the court may be required to make findings regarding the credibility of the attorney/witness and state those findings publicly. Thus, the use of an attorney affiant to prove disputable facts risks impairing both the attorney/client and the attorney/court relationship. *See United States v. LaRouche Campaign,* 682 F.Supp. 610, 615–16 (D.Mass.1987).

the proceedings and the form of the proffers, "the plaintiff has the burden of showing that jurisdiction exists." *Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 979 (1st Cir.1986); *accord McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Dalmau Rodriguez v. Hughes Aircraft Co.*, 781 F.2d 9, 10 (1st Cir.1986). The different standards applicable under different methods of adjudication concern what kind of "showing" the plaintiff must make for the case to survive the defendant's motion to dismiss.

### A. *Prima Facie* Showing

■ The most commonly used method of determining a motion to dismiss for want of personal jurisdiction is for the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction. To defeat a motion to dismiss when the court uses this method the plaintiff must make the showing as to every fact required to satisfy "both the forum's long-arm statute and the due process clause of the Constitution." *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir.1990); *accord Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389 (8th Cir.1991); *American Express International, Inc. v. Mendez-Capellan*, 889 F.2d 1175, 1178 (1st Cir.1989); *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364–65 (2d Cir.1986). This standard for deciding a motion to dismiss is commonly referred to as the *"prima facie"* standard or a standard requiring a *"prima facie"* showing. In this Opinion, we use *"prima facie"* showing in this sense.[2]

■ The *prima facie* showing of personal jurisdiction must be based on evidence of specific facts set forth in the record. *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7, 9 (1st Cir.1986). The "plaintiff must go beyond the pleadings and make affirmative proof." *Chlebda v.*

*H.E. Fortna & Bro. Inc.*, 609 F.2d 1022, 1024 (1st Cir.1979); *see also Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989) (noting that plaintiffs may not rest on their pleadings to make the *prima facie* showing).

We recognize that some courts—but a minority—appear to hold that allegations in a complaint, unsupported by any evidence in the record before the court, are sufficient to make a *prima facie* showing of personal jurisdiction so long as the defendant does not present evidence to contradict the allegations. *See, e.g., Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987); *Dowless v. Warren–Rupp Houdailles, Inc.*, 800 F.2d 1305, 1307 (4th Cir.1986). It has long been the rule of this circuit, however, that plaintiffs may not rely on unsupported allegations in their pleadings to make a *prima facie* showing of personal jurisdiction. *See Chlebda*, 609 F.2d at 1024 (observing that believing that jurisdictional allegations must be taken as true is an "elementary mistake").

■ In determining whether a *prima facie* showing has been made, the district court is not acting as a factfinder. It accepts properly supported proffers of evidence by a plaintiff as true. *See, e.g., Dakota Industries, Inc.*, 946 F.2d at 1389; *Serras*, 875 F.2d at 1214; *Murphy v. Erwin–Wasey, Inc.*, 460 F.2d 661, 663 (1st Cir.1972). Because the determination of the district court in applying the *prima facie* standard is one of law, review in the appellate court is nondeferential ("*de novo*"). *See, e.g., Olivier v. Merritt Dredging Co.*, 954 F.2d 1553, 1555 (11th Cir.1992); *Reed v. International Union of UAW*, 945 F.2d 198, 201 (7th Cir.1991).

Federal Rule of Civil Procedure 12 provides that a defense of lack of jurisdiction over the person,

> whether made in a pleading or by motion, . . . shall be heard and determined before trial on application of any party, unless

---

2. We note, however, that the terminology of the precedents is not uniform, and in some instances an opinion using the terminology of *"prima facie"* showing may fairly be read as requiring

a bit more—*e.g.*, that the plaintiff "present *plausible* evidence tending to show that the court has jurisdiction." *Chalwest, Ltd. v. Ellis*, 924 F.2d 1011, 1014 (11th Cir.1991) (emphasis added).

the court orders that the hearing and determination thereof be deferred until the trial.

Fed.R.Civ.P. 12(d). If a district court applies the *prima facie* standard and allows a motion to dismiss, it complies with the directive that the motion "shall be heard and determined before trial...." If, instead, it applies the *prima facie* standard and denies the motion to dismiss, it is implicitly, if not explicitly, ordering "that hearing and determination [of the motion to dismiss] be deferred until the trial." *Id.*

### B. Other Standards

■ A court may determine that in the circumstances of a particular case it is unfair to force an out-of-state defendant to incur the expense and burden of a trial on the merits in the local forum without first requiring more of the plaintiff than a *prima facie* showing of facts essential to *in personam* jurisdiction. A court may so determine, for example, when the proffered evidence is conflicting and the record is rife with contradictions, *see General Contracting & Trading Co. v. Interpole, Inc.*, 899 F.2d 109, 115 (1st Cir.1990), or when a plaintiff's affidavits are "patently incredible," *see Landmark Bank v. Machera*, 736 F.Supp. 375, 380 n. 7 (D.Mass.1990).

In these circumstances, the court may "hear[ ] and determine[ ] [the motion to dismiss] before trial," Fed.R.Civ.P. 12(d), considering all relevant evidence proffered by the parties and making all factual findings essential to disposition of the motion. When a court "hear[s] and determine[s]" a motion to dismiss in this way, the "hearing" is, at least implicitly if not explicitly, "evidentiary" in nature.

Not all "evidentiary hearings," however, involve evidence "taken orally in open court" as that phrase is used in Federal Rule of Civil Procedure 43(a). Under its own explicit terms, Rule 43(a) applies "[i]n

all trials," but not in pretrial proceedings. Moreover,

> [w]hen a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition.

Fed.R.Civ.P. 43(e); *see also General Contracting*, 899 F.2d at 115.

■ If issues of credibility are presented and must be resolved to determine an issue of fact material to the court's disposition of the motion to dismiss, it may be an abuse of discretion not to allow an opportunity for cross-examination of an affiant if requested. Even in such circumstances, however, a court may take most of the evidence at the pretrial evidentiary hearing by affidavits, authenticated documents, answers to interrogatories or requests for admissions, and depositions. *See Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 55 (1st Cir.1992) (directing the district court to secure further evidence "in whatever expeditious manner [it] determines—whether by evidentiary hearing, discovery, further affidavits, or any combination of these, or by other means"— where unresolved jurisdictional facts depended on the credibility of the parties).[3] Even without formal agreement or acquiescence of the parties, a court, in the exercise of discretion, may in appropriate circumstances hold the entire evidentiary hearing without taking any testimony "orally in open court."

■ After the parties have proffered their evidence, the court may weigh evidence and make findings about whether plaintiff has made a showing as to each jurisdictional fact. In doing so, it may apply a preponderance-of-the-evidence standard. *See, e.g., Dakota Industries, Inc.*, 946 F.2d at 1387; *Ealing Corp.*, 790 F.2d at 979 n. 1; *Data Disc, Inc. v. Systems*

**3.** *Bank One* concerned subject matter jurisdiction rather than *in personam* jurisdiction. Though issues of discretion and abuse of discretion with respect to the need for and form of evidentiary proceedings on a motion to dismiss may be similar in these different contexts, material differences exist in other respects. For example, an out-of-state defendant may waive lack of *in personam* jurisdiction. In contrast, subject matter jurisdiction cannot be conferred by waiver. *Id.* at 52.

*Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977).

If a court makes findings at a pretrial hearing by a preponderance of the evidence, however, troubling issues may later be presented, in the same or another forum, as to whether doctrines of either "issue preclusion" or "law of the case" preclude a party from asserting at trial—and before a jury if one has been demanded—contentions of fact contrary to what the district court found at the pretrial hearing. Especially troubling issues of this kind arise when, for example, long-arm jurisdiction depends on a finding that the claim on the merits arises out of the defendant's contacts with the forum state. A similar concern with the right to trial by jury is what animates the constitutional requirement that factual issues common to both legal and equitable claims in the same proceeding be tried to a jury first. *See Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 479, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510–511, 79 S.Ct. 948, 956–57, 3 L.Ed.2d 988 (1959).

Moreover, when factual issues are common to both the jurisdictional question and the claim on the merits, requiring the plaintiff to prove jurisdiction by a preponderance of the evidence in a Rule 12(d) preliminary proceeding may be an inefficient use of scarce judicial resources. "Judicial resources may be more efficiently deployed if the court holds but one [preponderance-of-the-evidence] hearing on the contested facts." *Serras,* 875 F.2d at 1215. Postponing proof by a preponderance of the evidence until trial has the additional advantage of allowing a plaintiff, when required to prove by a preponderance of the evidence, to present proof "in a coherent, orderly fashion and without the risk of prejudicing his case on the merits." *Data Disc, Inc.,* 557 F.2d at 1285 n. 2.

Concerns about troublesome implications of preponderance-of-the-evidence findings weigh heavily in favor of determining a motion to dismiss on the *prima facie* standard. *See, e.g., North American Video Corp. v. Leon,* 480 F.Supp. 213, 217 (D.Mass.1979); *see also Serras,* 875 F.2d at 1215 ("a district court may find sound reasons to rule" under a *prima facie* standard instead of preponderance of the evidence); *Data Disc, Inc.,* 557 F.2d at 1285 n. 2 (advising courts to consider applying the *prima facie* standard when jurisdictional facts are intertwined with the merits).

■ If, however, the court finds that determining a motion on the *prima facie* standard (thereby deferring the final jurisdictional determination until trial) imposes on a defendant a significant expense and burden of trial on the merits in the foreign forum that is unfair in the circumstances, the court may steer a third course that avoids both this unfair burden and (especially when the jurisdictional facts are enmeshed with the merits) the morass of unsettled questions of law regarding "issue preclusion" and "law of the case." This third method is to apply an intermediate standard between requiring only a *prima facie* showing and requiring proof by a preponderance of the evidence. Thus, even though allowing an evidentiary hearing and weighing evidence to make findings, the court may merely find whether the plaintiff has shown a likelihood of the existence of each fact necessary to support personal jurisdiction.

This conclusion is supported not only by a court's authority to exercise reasonable control over the order of proceedings and timing of decisions in a case but as well by relevant provisions of the Federal Rules of Civil Procedure. Rule 12(d) explicitly recognizes the court's authority to choose either (1) to hear and finally decide a motion to dismiss before trial (by a preponderance-of-the-evidence standard) or (2) to defer the determination under a preponderance-of-the-evidence standard until trial (if plaintiff has made a *prima facie* showing of jurisdiction). No sound reason appears for holding that a court can only choose between the two polar standards (*prima facie* and preponderance) and cannot steer a middle course. The discretionary choice left to the court by Rule 12(d) extends not only to the extremes but also to applying an intermediate standard requiring a "like-

lihood" showing. Especially is this so when applying such an intermediate standard is the most likely way to achieve a "just, speedy, and inexpensive determination," Fed.R.Civ.P. 1, of the entire action.

A showing of a likelihood that jurisdictional facts exists is a means of assuring that circumstances justify imposing on the out-of-state defendant the burden of a trial in the local forum, in which trial the issues of fact essential to establishing both jurisdiction and the merits of a claim will be decided by a preponderance of the evidence. If the court finds that the plaintiff has shown such justifying circumstances, the court may deny the motion to dismiss. If, instead, the plaintiff has not shown a likelihood of this strength, the court may grant the motion and dismiss forthwith.

When a court uses this third method, as when it uses the first method and denies a motion because the plaintiff fails to make a *prima facie* showing, a denial of the motion to dismiss is an implicit deferral until trial of the final ruling on jurisdiction. Unlike the first and like the second method, this third method involves factfinding rather than merely making a ruling of law regarding sufficiency of the evidence to present a fact question. Like the first and unlike the second method, however, the third method avoids potentially troubling issues of "issue preclusion" or "law of the case" (at least when the court denies the motion) because a determination by such an intermediate standard—like a determination on a "likelihood of success" standard applied to a motion for preliminary injunction, *see Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 5 (1st Cir.1991)—does not purport to be a finding by the same standard on the same issue as will be decided at trial.

In addition, as already noted, this third method is in some circumstances a more efficient use of resources—judicial and otherwise—than the second method. The court may place reasonable constraints on the scope and length of the evidentiary hearing. Rather than allowing full opportunity for both parties to present all relevant evidence and requiring that plaintiffs, at a pretrial hearing, "mount proof which would, in effect, establish the validity of their claims and their right to the relief sought," *Serras*, 875 F.2d at 1215 (quoting *Milligan v. Anderson*, 522 F.2d 1202, 1207 (10th Cir.1975)), the court, although taking into account evidence offered by the defendant as well as that offered by the plaintiffs, and considering the scope of the opportunity of each party to proffer evidence, may dismiss after proceeding only far enough to find that plaintiffs have not shown a likelihood of the existence of each fact essential to jurisdiction.

Any standard the trial court applies, other than the *prima facie* standard, will to some extent involve weighing evidence to make findings (either under a preponderance or under a likelihood standard), exercising discretion, or both. Review of any findings or discretionary determination will be deferential rather than *de novo*. Of course, review of the district court's legal conclusion as to whether the findings support personal jurisdiction will be nondeferential.

### III. Application of the Standards

In the present case neither the Boits nor Gar–Tec requested a hearing or findings of fact. The magistrate judge used the word "find" in explaining his recommendation, but only in the phrase "I cannot find." Moreover, he noted that the "motion record does not contain any information of evidentiary quality...." *See* Part I, *supra*. Thus, a close reading of his recommendation supports the inference that he was applying the *prima facie* standard. The district court as well, in concluding that the evidentiary record before the court failed to make a showing that Gar–Tec sold the hot air gun at issue to Brookstone, or that Brookstone sold the gun to Babson by mail, implicitly applied the *prima facie* standard and held that the Boits had failed to make a *prima facie* showing of personal jurisdiction. Accordingly, we conclude that it is appropriate to review nondeferentially, making a *de novo* determination as to whether the Boits presented

evidence sufficient to constitute a *prima facie* showing of *in personam* jurisdiction. We note, however, that even were we to treat the magistrate judge's determination, and the district judge's adoption of it, as truly "find[ings]" under a "likelihood" standard, the judgment of dismissal should be upheld because the "finding" that the Boits failed to show that Gar–Tec sold to Brookstone is not clearly erroneous, and dismissing upon that finding was not an abuse of discretion.

### A.

Under a literal interpretation of Maine's long-arm statute, 14 M.R.S.A. § 704–A, courts sitting in Maine may exercise personal jurisdiction over any party who transacts business in the state or who commits a tort if either the tort itself or the consequences of the tort occur in the state. 14 M.R.S.A. § 704–A(2)(A) and (B). By its express language, the courts must construe the statute to find personal jurisdiction to the fullest extent permitted by the due process clause of the United States Constitution. 14 M.R.S.A. § 704–A(1); *Tyson v. Whitaker & Son, Inc.*, 407 A.2d 1, 3 (Me.1979).

The due process clause of the Constitution requires that two conditions be met before an out-of-state defendant can be brought into a forum in the state. First, "the defendant must have purposely established 'minimum contacts' with the forum such that he can reasonably anticipate being haled into that forum's court." *U.S.S. Yachts, Inc.*, 894 F.2d at 11 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted)). "Second, if such contacts exist, the exercise of personal jurisdiction over the defendant must comport with 'fair play and substantial justice.'" *Id.* (citing *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (citations omitted)).

In its opposition to Gar–Tec's motion to dismiss, the Boits argued that when the hot air gun that Babson used on their home was sold by Gar–Tec to Brookstone, a national retailer with a national mail order business, Gar–Tec should have foreseen that the hot air gun could end up being sold to a customer in Maine, and that for this reason Gar–Tec should have "reasonably anticipated" being haled into court in Maine. In addition, the Boits argued that asserting personal jurisdiction over Gar–Tec under these circumstances would comport with "fair play and substantial justice."

The district court did not reach the issue of whether asserting personal jurisdiction over Gar–Tec based on its alleged contacts with Maine would comport with due process requirements if a *prima facie* showing of the alleged contacts had been made. Instead, the court concluded that the Boits had failed to provide any evidentiary basis for their assertion that Babson had bought the hot air gun through the mail in Maine from Brookstone and that Brookstone bought the hot air gun from Gar–Tec. Thus, because the Boits had failed to show that Gar–Tec had any contacts with Maine, the court reasoned that it did not need to decide whether the alleged contacts, if proved, would be a sufficient basis for personal jurisdiction.

### B.

Contrary to the assumption of the district court, the record does provide an evidentiary basis for the Boits' assertion that Babson bought the hot air gun through the mail from Brookstone. At his deposition Babson testified, under oath, that in 1984 he received a Brookstone catalog at his home in Maine. He saw the hot air gun advertised in the catalog and placed a written order for the gun with Brookstone. Brookstone then mailed the hot air gun to Babson. As a result, in applying the *prima facie* standard, the court was required to accept Babson's deposition testimony as true. *See, e.g., Murphy*, 460 F.2d at 663. Thus, it was erroneous to conclude that there was no evidence to support the Boits' allegation that the hot air gun was bought by mail order from Brookstone.

### C.

▮ The Boits contend that the district court's conclusion that the record does not

support their allegation that Gar–Tec sold the hot air gun to Brookstone is equally erroneous. The hot air gun was labelled "Gar–Tec" and was delivered with an operating manual also labelled "Gar–Tec" with instructions to make contact with Gar–Tec in Indiana for warranty service. These facts, the Boits argue, support an inference that Gar–Tec imported the hot air gun and then relabelled it with its own name for wholesale distribution. In addition, the Boits say, the fact that Brookstone sold the Gar–Tec labelled hot air gun to Babson supports an inference that sometime after the hot air gun was in Gar–Tec's possession it came into Brookstone's control.

As Gar–Tec persuasively argues, however, the inferred "facts" that the hot air gun was once in Gar–Tec's possession and later came into Brookstone's possession do not establish that Gar–Tec sold the gun wholesale directly to Brookstone. Nothing in the record before the district court indicates where the hot air gun went after it left Gar–Tec's possession, and when. In other words, the record no more supports an inference that Gar–Tec sold the hot air gun directly to Brookstone than it does an inference that Gar–Tec sold to another company without knowledge that it might sell to Brookstone. The Boits' allegation that Gar–Tec sold the hot air gun to Brookstone directly is the cornerstone of their contention that Gar–Tec should have "reasonably anticipated being haled" into court in Maine. Because that allegation is wholly unsupported by the record, the district court correctly ruled that the Boits had failed to make a *prima facie* showing of *in personam* jurisdiction.

The Boits respond that the court must accept as true their allegation that Gar–Tec sold the hot air gun to Brookstone for nationwide retail distribution. In particular, the Boits contend that "allegations in the plaintiff's complaint that are not expressly controverted by affidavits must be construed as true." Thus, the argument goes, because Gar–Tec has not submitted affidavits that state affirmatively that Gar–Tec did not sell the hot air gun to Brookstone, the district court erred by not accepting those allegations as true for purposes of Gar–Tec's motion to dismiss.

The Boits misunderstand their burden. It is true that at this stage in this litigation, given the way the district court proceeded with the parties' acquiescence, they need only make a *prima facie* showing of personal jurisdiction. Even a *prima facie* showing, however, must be based on specific facts set forth in the record. *See, e.g., Kowalski,* 787 F.2d at 9; *Chlebda,* 609 F.2d at 1024. The Boits cannot rely on unsupported allegations in their pleadings. They must produce evidence to support their jurisdictional allegation because they have the burden of showing that the court may exercise *in personam* jurisdiction over Gar–Tec.

Moreover, the Boits' motion to submit Babson's deposition transcript in support of their opposition to Gar–Tec's motion to dismiss is somewhat at odds with their present contention. In their motion the Boits explained that their opposition sets forth facts "that do not yet appear on the official record before the Court." Thus, the Boits requested permission to file a copy of Babson's transcript as soon as the deposition was completed so that "the Court may properly consider Mr. Babson's testimony." This contention is, of course, consistent with the rule that unsupported allegations are not sufficient to defeat a motion to dismiss based on lack of *in personam* jurisdiction.

■ The Boits respond further that if the record is devoid of any support for their allegation that Gar–Tec sold the hot air gun to Brookstone, it is because Gar–Tec has not informed the court as to whether it sold the gun to Brookstone. They complain that only Gar–Tec knows the answer to this question.

The Boits understate their own ability and burden to create a record that supports their jurisdictional allegations. The Boits could have requested that the court allow discovery on the limited issue of personal jurisdiction. *See, e.g., Whittaker Corp. v. United Aircraft Corp.,* 482 F.2d 1079, 1085–86 (1st Cir.1973); *Serras,* 875 F.2d at 1214; *Data Disc, Inc.,* 557 F.2d at 1285 n.

1. For example, they could have deposed Gar–Tec—or even Brookstone—to discover if Gar–Tec sold the hot air gun to Brookstone. An even simpler and less expensive course would have been to propound interrogatories to Gar–Tec, or serve appropriate requests for admissions.

Indeed, if the Boits had requested that the district court defer ruling on Gar–Tec's motion pending further discovery, it might have been an abuse of discretion to deny the request. In *Surpitski v. Hughes–Keenan Corp.*, 362 F.2d 254 (1st Cir.1966) (per curiam), for example, this court held that it was an abuse of discretion to disallow discovery before the court ruled on the motion to dismiss for want of personal jurisdiction where the plaintiff had been diligent and was somewhat unfamiliar with his adversary's business practices. *Id.* at 255–56; *see American Express*, 889 F.2d at 1180–81; *Whittaker Corp.*, 482 F.2d at 1086.

In the present case the Boits made one motion with respect to discovery on the issue of personal jurisdiction—a motion for leave to depose Babson and file the transcript in support of their opposition to Gar–Tec's motion to dismiss. The court allowed that motion. Beyond their request to file Babson's deposition, however, the Boits never requested that the district court defer ruling on Gar–Tec's motion pending further discovery on the jurisdictional issue. Having failed to request any additional discovery to provide evidentiary support for their jurisdictional allegations, the Boits cannot now complain that Gar–Tec alone has knowledge of the relevant jurisdictional facts. *See Whittaker Corp.*, 482 F.2d at 1086 (holding that it was not an abuse of discretion to deny plaintiff's motion for discovery when motion was made after the court had ruled on defendant's motion to dismiss for lack of *in personam* jurisdiction).

"The burden of proving the facts necessary to sustain jurisdiction is on the plaintiff." *American Express*, 889 F.2d at 1178 (quoting *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 904 (1st Cir. 1980)). To hold that the Boits have made a *prima facie* showing of personal jurisdiction because Gar–Tec has not presented evidence to refute the Boits' unsupported allegations would place the burden on defendants to prove that the court does not have personal jurisdiction. Such a ruling would eviscerate the requirement that plaintiffs provide affirmative proof of their jurisdictional allegations.

The record does not support the Boits' allegation that Gar–Tec sold the hot air gun to Brookstone. Accordingly, the district court properly dismissed the action against Gar–Tec for lack of *in personam* jurisdiction.

### IV. Purposefully Established Contacts

Even if the Boits had proffered evidence that (if credited by a factfinder) would support findings that Gar–Tec sold the hot air gun to Brookstone and that Gar–Tec knew or should have known that the hot air gun could be sold by Brookstone to a customer in Maine, we conclude that the record would have remained insufficient to satisfy the requirement of a *prima facie* showing of personal jurisdiction over Gar–Tec. The Boits still would have failed to proffer evidence sufficient to support a finding that Gar–Tec purposefully established minimum contacts with Maine such that Gar–Tec should have reasonably anticipated being haled into a court in Maine. *See U.S.S. Yachts, Inc.*, 894 F.2d at 11.

The Boits contend that a seller satisfies the requisite "reasonable anticipation" requirement of due process when it " 'delivers its products into the stream of commerce with the expectation that [these products] will be purchased by consumers within the forum state.' " *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 667 (7th Cir.1986) (quoting *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184). Thus, the argument goes, because Gar–Tec sold the hot air gun to Brookstone, a national tool retailer, Gar–Tec should have "reasonably anticipated" that the hot air gun might be sold by Brookstone to a customer in Maine. In other words, by its act of selling the hot air gun to Brookstone, Gar–Tec purposefully established minimum contacts with

Maine, such that it should have reasonably anticipated having to defend a lawsuit there. This argument is commonly referred to as the "stream of commerce" theory of personal jurisdiction.

In *Dalmau Rodriguez v. Hughes Aircraft Company*, 781 F.2d 9 (1st Cir.1986), this court considered and rejected a closely analogous " 'stream of commerce' theory." *Id.* at 15. The plaintiffs in that case argued that because the defendant knew that two helicopters it sold to another company were destined for Puerto Rico, the defendant purposefully established minimum contacts with Puerto Rico sufficient to comport with due process. This court, however, concluded that the resale of two Hughes helicopters to a police department in Puerto Rico

> was not a stream [of commerce] or the beginning of one; it was an isolated splash. It was not the type of transaction that could reasonably lead a manufacturer to believe would be the basis for haling him into court in Puerto Rico.
>
> We do not think that whether Hughes knew that the helicopters were being sold to the Puerto Rico Police Department has any jurisdictional significance. The test is not knowledge of the ultimate destination of the product, but whether the manufacturer has purposefully engaged in forum activities so it can reasonably expect to be haled into court there. . . .

*Id.*

Shortly after the *Hughes* decision, the Supreme Court specifically addressed a "stream of commerce" contention in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). *Asahi* involved an indemnification dispute between Cheng Shin (a Taiwanese corporation) and Asahi (a Japanese corporation) that remained as the residue of a product liability action initiated in a California court and settled in other respects. The Court reversed a judgment of the California Supreme Court holding that California had jurisdiction over Cheng Shin's claim against Asahi, a tire valve manufacturer, whose only contact with California was selling tire valves to Cheng Shin in Taiwan followed by Cheng Shin's inserting some of the Asahi valves into tires sold in California. In contrast with the isolated sales shown in *Hughes* and in the case now before us, however, the sales alleged in *Asahi* were numerous and continuing.

Justice O'Connor, delivering the judgment of the unanimous Court, held that California's exercise of jurisdiction over Cheng Shin's claim against Asahi was beyond the limits of due process. In Part II–A of the Opinion, speaking for a plurality of four (Chief Justice Rehnquist, Powell, O'Connor, and Scalia) Justice O'Connor added that the "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112, 107 S.Ct. at 1032.

> [A] defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* Thus, because Asahi's only "contact" with California was its awareness that Cheng Shin sold tires with Asahi valves to consumers in California, Asahi did not purposefully establish any contacts in California such that it should have reasonably anticipated being haled into court in that state.

Another four Justices (Brennan, joined by White, Marshall, and Blackmun) stated in a concurring opinion that placing a product into the stream of commerce is a purposeful act directed at the forum state as long as the defendant is aware the product is being marketed in the forum state. *Id.* at 116–17, 107 S.Ct. at 1034–35. The ninth Justice (Stevens, joined by White and Blackmun) reasoned, in a concurring opinion, that placing a product into the stream of commerce may rise to the level of a purposeful availment depending on the volume, value and hazardous character of the product. *Id.* at 122, 107 S.Ct. at 1037; *see also Benitez–Allende v. Alcan Aluminio*

*Do Brasil, S.A.,* 857 F.2d 26, 29–30 (1st Cir.1988) (explaining the *Asahi* opinions).

We are not persuaded that the opinions in *Asahi* have undermined *Hughes.* Our conclusion is bolstered by the fact that the Boits could not cite a single post-*Asahi* case holding that by placing a product into the stream of commerce with knowledge that the product could end up in the forum state a defendant purposefully establishes minimum contacts in that state. Indeed, those circuits that have squarely addressed the stream-of-commerce issue since *Asahi* have adopted Justice O'Connor's plurality view.[4] *See Madara v. Hall,* 916 F.2d 1510, 1516–17 (11th Cir.1990); *Falkirk Mining Co. v. Japan Steel Works, Ltd.,* 906 F.2d 369, 375–76 (8th Cir.1990); *cf. Keds Corp. v. Renee International Trading Corp.,* 888 F.2d 215, 220 (1st Cir.1989); *Hugel v. McNell,* 886 F.2d 1, 4 (1st Cir.1989).

■ The only "contact" the Boits even allege Gar–Tec had with Maine is Gar–Tec's alleged act of selling the hot air gun to Brookstone followed by Brookstone's selling the gun through the mail to Babson in Maine. There is no evidence in the record that Gar–Tec intended to serve the market in Maine. For example, there is no evidence that Gar–Tec designed the product for Maine, advertised in Maine, established channels for providing regular advice to customers in Maine, or marketed the product through a distributor who had agreed to serve as a sales agent in Maine. *See Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032. Accordingly, because "mere awareness" that a product may end up in the forum state does not constitute "purposeful availment," the district court could not have constitutionally exercised personal jurisdiction over Gar–Tec.

### V. Conclusion

The district court properly determined that the Boits failed to provide any information of evidentiary quality to support

their jurisdictional allegations that Gar–Tec sold the hot air gun to Brookstone and that Gar–Tec knew or should have known that Brookstone might sell the hot air gun to a customer in Maine. In addition, however, even if the Boits had proffered evidence to support these allegations, we conclude that Gar–Tec's awareness that the hot air gun might end up in Maine, without more, does not convert Gar–Tec's sale of the hot air gun to Brookstone into an act purposefully directed toward Maine. Accordingly, the district court properly dismissed the complaint against Gar–Tec for want of *in personam* jurisdiction.

*Affirmed.* Costs to appellee.

---

4. We note, also, that even under Justice Stevens' reasoning in *Asahi,* Gar–Tec's placing the hot air gun into the stream of commerce would not amount to purposeful availment because the demonstrated volume and value of Gar–Tec's contacts with Maine through its products was negligible. *See Asahi,* 480 U.S. at 122, 107 S.Ct. at 1037. The record before the district court showed only that one Gar–Tec hot air gun had ended up in Maine.