1
 2025 CO 36 Jefferson County, Colorado, Petitioner v. Krista Dozier. Respondent No. 23SC483
Supreme Court of Colorado, En Banc
June 9, 2025
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 21CA1726
 
 
          
 Attorneys for Petitioner:
 
 
          
 Jefferson County Attorney's Office
 
 
          
 Kimberly S. Sorrells, Jefferson County Attorney
 
 
           Eric
 T. Butler, Deputy County Attorney
 
 
           Jason
 W. Soronson, Assistant County Attorney
 
 
          
 Golden, Colorado
 
 
          
 Attorneys for Respondent:
 
 
           Law
 Offices of Jonathan S. Willett
 
 
          
 Jonathan S. Willett
 
 
          
 Boulder, Colorado
 
 
          
 Attorneys for Amicus Curiae Colorado Counties, Inc.:
 
 
           Hall
 & Evans, L.L.C.
 
 
           Andrew
 D. Ringel
 
 2
 
          
 Denver, Colorado
 
 
          
 JUSTICE HOOD delivered the Opinion of the Court, in which
 CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
 GABRIEL, JUSTICE HART, JUSTICE SAMOUR, and JUSTICE
 BERKENKOTTER joined.
 
 3
 
          
 OPINION
 
 
           HOOD
 JUSTICE
 
 
          ¶1
 After slipping and falling on an unmarked puddle of water in
 the Jefferson County courthouse, Krista Dozier brought a tort
 action against Jefferson County (the "County"). The
 County moved to dismiss the case, claiming immunity under the
 Colorado Governmental Immunity Act ("CGIA"),
 §§ 24-10-101 to -120, C.R.S. (2024). Dozier
 countered that the spill was a "dangerous
 condition" of a public building, an exception to CGIA
 immunity. The district court found that the County's
 response to the spill was reasonable, and so the
 dangerous-condition exception didn't apply. The court
 then granted the County's C.R.C.P. 12(b)(1) motion to
 dismiss Dozier's claims for lack of subject matter
 jurisdiction. A division of the court of appeals reversed,
 holding that (1) the reasonableness of the County's
 response wasn't relevant to the court's jurisdiction,
 and (2) the County had waived CGIA immunity under the
 dangerous-condition exception. Dozier v. Jefferson
 Cnty., No. 21CA1726, ¶¶ 14, 18-19 (May 25,
 2023).
 
 
          ¶2
 We now reverse the judgment of the court of appeals. We hold
 that when disputed jurisdictional facts are inextricably
 intertwined with the merits, a plaintiff must demonstrate a
 likelihood of the existence of the facts necessary to
 establish a waiver of CGIA immunity. We further hold that a
 plaintiff must show that a public entity's negligent act
 or omission proximately caused the condition in question for
 the dangerous-condition exception to apply. Because the
 district
 
 4
 
 court found that the County's response to the spill was
 reasonable, it correctly concluded that Dozier had failed to
 establish that the spill was a "dangerous
 condition" and that it lacked jurisdiction over her
 claims.
 
 
          I.
 Facts and Procedural History
 
 
          ¶3
 In March 2019, an employee at the County courthouse noticed a
 puddle of water in a hallway and contacted facilities
 management. But before the spill was cleaned up, Dozier
 slipped on it and fell.
 
 
          ¶4
 In 2021, Dozier brought a premises liability and negligence
 action against the County. The County moved to dismiss,
 arguing that it was immune from liability under the CGIA
 because the spill wasn't a "dangerous
 condition" of a public building. See §
 24-10-106(1)(c), C.R.S. (2024). Specifically, the County
 maintained that its failure to warn of or to clean up the
 spill before the accident wasn't negligent because less
 than five minutes had elapsed between an employee learning of
 the spill and Dozier's fall. Dozier contended that the
 employee had known about the puddle for closer to twenty
 minutes.
 
 
          ¶5
 The district court held an evidentiary hearing pursuant to
 Trinity Broadcasting of Denver, Inc. v. City of
 Westminster, 848 P.2d 916 (Colo. 1993) (a
 "Trinity hearing"), to resolve the
 "genuine factual dispute" over how much time had
 elapsed between the County learning of the spill and Dozier
 falling. The district court found that the spill wasn't a
 "dangerous condition" because the
 
 5
 
 County didn't "kn[ow] about it in enough time to
 correct it before Ms. Dozier fell." So, it granted the
 County's motion to dismiss.
 
 
          ¶6
 A division of the court of appeals reversed, reasoning that
 the district court had conflated the issues of immunity and
 liability. Dozier, ¶¶ 12-14. In the
 division's view, whether the County acted reasonably
 after it learned of the spill wasn't "relevant to,
 let alone determinative of," the district court's
 jurisdiction; instead, the County's conduct related to
 the factual merits issue of causation. Id. at ¶
 14. Applying what it deemed "the appropriate legal
 standard," id. at ¶ 15, the division then
 determined that Dozier's allegations established the
 requisite "minimal causal connection"
 between her injuries and the County's failure to warn of
 or to clean up the spill, id. at ¶ 17 (citing
 Tidwell ex rel. Tidwell v. City & Cnty. of
 Denver, 83 P.3d 75, 86 (Colo. 2003)). Therefore, the
 division held, the County had waived CGIA immunity under the
 dangerous-condition exception. Id. at ¶ 19.
 
 
          ¶7
 We granted the County's petition for
 review.[1]
 
 6
 
          II.
 Analysis
 
 
          ¶8
 We begin by discussing the principles that govern
 interpretation of the CGIA. After explaining the standard of
 review, we examine the relevant CGIA provisions. We then
 consider the plaintiff's burden to prove that a public
 entity waived CGIA immunity and provide the framework for
 assessing whether a public entity has waived immunity under
 the dangerous-condition exception. Finally, we apply that
 framework.
 
 
          A.
 Interpretive Principles
 
 
          ¶9
 Resolving the issues presented in this case requires us to
 interpret the CGIA. In doing so, we recognize that, because
 the CGIA derogates Colorado's common law, we must
 strictly construe legislative grants of immunity and broadly
 construe exceptions, or waivers, to that immunity.
 Tidwell, 83 P.3d at 81. Our goal in interpreting
 statutes is to effectuate the legislature's intent.
 Springer v. City & Cnty. of Denver, 13 P.3d 794,
 799 (Colo. 2000). Accordingly, we construe the CGIA as a
 whole, "giving consistent, harmonious, and sensible
 effect to all of its parts." City & Cnty. of
 Denver v. Dennis, 2018 CO 37, ¶ 12, 418 P.3d 489,
 494. Because we must respect the legislature's choice of
 language, we will not add or subtract words from the statute.
 Id. If the statutory language is unambiguous, we
 "give effect to its plain and ordinary meaning and look
 no further." Id. (quoting Smokebrush Found.
 v. City of Colo. Springs, 2018 CO 10, ¶ 18, 410
 P.3d 1236, 1240). But if the
 
 7
 
 language is ambiguous, "we may consider other aids to
 statutory construction," Hice v. Giron, 2024 CO
 9, ¶ 10, 543 P.3d 385, 390 (quoting McBride v.
 People, 2022 CO 30, ¶ 23, 511 P.3d 613, 617), such
 as "[t]he consequences of a particular
 construction," § 2-4-203(1)(e), C.R.S. (2024).
 
 
          B.
 Standard of Review
 
 
          ¶10
 The CGIA generally immunizes public entities "from
 liability in all claims for injury that lie in tort or could
 lie in tort." § 24-10-106(1). However, the
 legislature has carved out exceptions that, when applicable,
 constitute a waiver of immunity and subject public entities
 to liability as if they were private persons. See
 §§ 24-10-106 to -107, C.R.S. (2024).
 
 
          ¶11
 Whether CGIA immunity applies in a particular case is a
 jurisdictional issue governed by Rule 12(b)(1)'s standard
 of dismissal. Maphis v. City of Boulder, 2022 CO 10,
 ¶ 13, 504 P.3d 287, 291. Under this standard, the
 plaintiff bears "the burden of proving jurisdictional
 facts adequate to support subject matter jurisdiction."
 City & Cnty. of Denver v. Crandall, 161 P.3d
 627, 632 (Colo. 2007). If the jurisdictional facts are
 undisputed, the court may decide the issue of jurisdiction as
 a matter of law, without first holding a hearing. See
 Tidwell, 83 P.3d at 85-86. But if the jurisdictional
 facts are disputed, the district court may hold an
 evidentiary hearing. Medina v. State, 35 P.3d 443,
 452 (Colo. 2001).
 
 8
 
          ¶12
 At the evidentiary hearing, a district court "may
 receive any competent evidence pertaining to" a factual
 attack on the jurisdictional allegations of the complaint.
 Trinity, 848 P.2d at 924. The court should afford
 the plaintiff the reasonable inferences from her undisputed
 evidence and, if the court finds that the plaintiff's
 allegations are true, it should also give the plaintiff the
 reasonable inferences from her disputed evidence.
 Dennis, ¶ 11, 418 P.3d at 494;
 Tidwell, 83 P.3d at 85-86. The district court
 "is authorized to make appropriate factual
 findings" and must rely on these facts in deciding, as a
 matter of law, whether it has jurisdiction to hear the case.
 Medina, 35 P.3d at 452.
 
 
          ¶13
 Thus, a district court's resolution of a Rule 12(b)(1)
 motion to dismiss presents a mixed question of fact and law.
 Maphis, ¶ 14, 504 P.3d at 291. We defer to the
 district court's factual findings unless they're
 clearly erroneous, and we review the district court's
 conclusion regarding CGIA immunity de novo. Dennis,
 ¶ 12, 418 P.3d at 494.
 
 
          C. A
 "Dangerous
 Condition" of a Public
 Building
 
 
          ¶14
 A public entity waives CGIA immunity when the plaintiff's
 injuries resulted from "[a] dangerous condition of any
 public building." § 24-10-106(1)(c). Dozier argues
 that this exception applies here because her injuries
 resulted from an unmarked spill in the courthouse, which no
 one disputes is a public building.
 
 
          ¶15
 The CGIA defines a "[d]angerous condition" as
 
 9
 
 either a physical condition of a facility or the use thereof
 that constitutes an unreasonable risk to the health or safety
 of the public, which is known to exist or which in the
 exercise of reasonable care should have been known to exist
 and which condition is proximately caused by the
 negligent act or omission of the public entity or public
 employee in constructing or maintaining such facility.
 
 
 § 24-10-103(1.3), C.R.S. (2024) (emphasis added).
 We've interpreted this definition as creating a
 four-factor test. E.g., Walton v. State,
 968 P.2d 636, 644 (Colo. 1998). Accordingly, the
 dangerous-condition exception to CGIA immunity applies here
 if Dozier's injuries resulted from (1) the physical
 condition of the courthouse-i.e., the unmarked spill; (2)
 "which constitute[d] an unreasonable risk to the health
 or safety of the public"; (3) about which the County
 reasonably knew or should have known; and (4) which was
 proximately caused by the County's negligent act or
 omission in maintaining the courthouse. St. Vrain Valley
 Sch. Dist. RE-1J v. Loveland ex rel. Loveland, 2017 CO
 54, ¶ 16, 395 P.3d 751, 755.
 
 
          ¶16
 The County argues that the reasonableness of its response is
 relevant to the fourth factor; namely, whether the spill was
 proximately caused by the County's negligent act or
 omission. Dozier counters that she need only show that the
 County had notice of the spill to prove that the
 dangerous-condition exception applies. Thus, the parties
 dispute only the fourth factor: proximate cause.
 
 
          ¶17
 Before interpreting and applying the fourth factor of the
 "dangerous condition" test, we first clarify the
 burden the plaintiff must meet to prove that a public entity
 waived CGIA immunity.
 
 10
 
          1.
 Burden of Proof
 
 
          ¶18
 We've long held that the plaintiff's burden to prove
 that a public entity waived immunity is "relatively
 lenient." Dennis, ¶ 11, 418 P.3d at 494;
 Tidwell, 83 P.3d at 85-86; see also
 Trinity, 848 P.2d at 925. We haven't, however,
 articulated what this burden entails, particularly when the
 jurisdictional facts are inextricably intertwined with the
 merits of the claim, as they are here. We do so now.
 
 
          ¶19
 We examine three options. First, we consider a prima
 facie showing. We've held that this evidentiary burden is
 appropriate when the district court relies only on
 documentary evidence and thus doesn't need to engage in
 factfinding to decide a Rule 12(b)(2) motion to dismiss for
 lack of personal jurisdiction. Archangel Diamond Corp. v.
 Lukoil, 123 P.3d 1187, 1192 (Colo. 2005). This burden is
 "light": The plaintiff need only "raise[] a
 reasonable inference that the court has jurisdiction,"
 and the court accepts the plaintiff's undisputed
 allegations as true and resolves disputes arising from
 "the parties' competent evidence" in the
 plaintiff's favor. Id. This standard is
 inapplicable, however, when an evidentiary hearing is needed
 to resolve any factual disputes related to jurisdiction.
 See Ferrel v. Colo. Dep't of Corr., 179 P.3d
 178, 184 (Colo.App. 2007) (explaining that, "when the
 resolution of disputed facts is necessary to determine the
 court's jurisdiction, application of a prima facie
 standard is directly at odds with the very
 
 11
 
 purpose of a Trinity hearing"); see also
 Finnie v. Jefferson Cnty. Sch. Dist. R-1, 79 P.3d 1253,
 1260-61 (Colo. 2003). So, we must press forward and consider
 other options.
 
 
          ¶20
 Second, on the other end of the spectrum, we could
 simply require the plaintiff to prove an immunity exception
 by a preponderance of the evidence. After all, this is the
 standard that generally applies in civil actions. §
 13-25-127(1), C.R.S. (2024). And we've applied this
 standard in both the personal and subject matter jurisdiction
 contexts when the jurisdictional facts were disputed and
 necessitated a hearing. See Archangel Diamond Corp.,
 123 P.3d at 1192 (determining personal jurisdiction in a
 pretrial hearing); Cash Advance & Preferred Cash
 Loans v. State, 242 P.3d 1099, 1113 (Colo 2010)
 (determining subject matter jurisdiction in a pretrial
 hearing). But we've cautioned district courts to "be
 wary of finally deciding the jurisdictional question at an
 evidentiary hearing where the jurisdictional facts are
 inextricably intertwined with the merits of the case, because
 doing so could endanger the plaintiff's substantive right
 to a jury trial," and the court's findings
 "could later have a preclusive effect against a
 party." Archangel Diamond Corp., 123 P.3d at
 1193 (citing Foster-Miller, Inc. v. Babcock & Wilcox
 Can., 46 F.3d 138, 146 (1st Cir. 1995)). Instead, when
 faced with inextricably intertwined facts, "the court
 should only satisfy itself that it has the ability to hear
 the case." Dennis, ¶ 11, 418 P.3d at 494.
 So, the preponderance standard is less than ideal.
 
 12
 
          ¶21
 Third, we could take guidance from federal
 precedent, which offers a middle ground-the likelihood
 standard-when disputed jurisdictional facts are "bound
 up with the claim on the merits."
 Foster-Miller, 46 F.3d at 146. This standard is more
 exacting than the prima facie showing, as it "involves
 factfinding rather than merely making a ruling of law
 regarding sufficiency of the evidence to present a fact
 question." Id. (quoting Boit v. Gar-Tec
 Prods., Inc., 967 F.2d 671, 678 (1st Cir. 1992)). But
 it's less demanding than the preponderance standard, as
 the court's findings are "limited to probable
 outcomes as opposed to definitive findings of fact."
 Id. In this way, it is like the first element of the
 preliminary injunction analysis, under which "the
 plaintiff must show a likelihood," or "a reasonable
 probability[,] of success on the merits." Dallman v.
 Ritter, 225 P.3d 610, 621 (Colo. 2010) (first quoting
 Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531,
 546 n.12 (1987); and then quoting Rathke v.
 MacFarlane, 648 P.2d 648, 653-54 (Colo. 1982)).
 
 
          ¶22
 Although this "likelihood standard" itself is
 hardly pervasive, it has friends. Several federal courts of
 appeals have relaxed the plaintiff's burden of proof when
 disputed jurisdictional facts are inextricably intertwined
 with the merits under the federal analog to the CGIA, the
 Federal Tort Claims Act. The Third Circuit, for example, has
 instructed district courts to "demand 'less in the
 way of jurisdictional proof than would be appropriate at a
 trial stage'" under these circumstances to
 "ensure that defendants are not allowed to use Rule
 12(b)(1) to resolve the merits"
 
 13
 
 before the plaintiff has been "given the benefit of
 discovery." CNA v. United States, 535 F.3d 132,
 144-45 (3d Cir. 2008) (quoting Gould Elecs. Inc. v.
 United States, 220 F.3d 169, 178 (3d Cir.
 2000)).[2]
 
 
          ¶23
 The likelihood standard appropriately addresses the
 countervailing considerations we've discussed. Unlike the
 prima facie standard, it involves weighing evidence and
 making factual findings and "enhance[es] the courts'
 ability to weed out unfounded claims of jurisdiction" at
 the pleading stage, as the CGIA mandates.
 Foster-Miller, 46 F.3d at 146. On the other hand, by
 limiting these jurisdictional findings "to probable
 outcomes," plaintiffs are spared having to meet the
 preponderance standard-the burden of proof at trial-before
 completing discovery.
 
 14
 
          ¶24
 So, we hold that when a public entity asserts CGIA immunity
 and the disputed jurisdictional facts are inextricably
 intertwined with the merits, the likelihood standard applies.
 We now return to the fourth factor of the "dangerous
 condition" test and consider whether the disputed
 jurisdictional facts are inextricably intertwined with the
 merits of Dozier's claim.
 
 
          2.
 Fourth Factor
 of a
 "Dangerous Condition": Proximate
 Cause
 
 
          ¶25
 The division concluded that Dozier needed to prove only that
 the County had notice of the spill to establish that the
 spill was a "dangerous condition." Dozier,
 ¶¶ 11-14. According to the division, by considering
 the reasonableness of the County's response, the district
 court essentially required Dozier to prove liability at the
 Trinity hearing. Id. at ¶ 14. We
 disagree.
 
 
          ¶26
 While the division is correct that Dozier didn't need
 "to prove that the County was negligent and liable for
 her injuries," id. (emphasis added),
 as that inquiry is properly reserved for trial, the
 definition of "dangerous condition" plainly
 requires the plaintiff to prove that the
 "condition [wa]s proximately caused by the
 negligent act or omission of the public
 entity," § 24-10-103(1.3) (emphases added). Indeed,
 the definition goes on to state, "The mere existence of
 wind, water, snow, ice or temperature shall not, by
 itself, constitute a dangerous condition." Id.
 (emphasis added). So, Dozier was required to prove that the
 allegedly dangerous condition existed because of the
 County's negligent act or omission. Cf.
 Springer,
 
 15
 
 13 P.3d at 801 ("In each . . . subsection [of section
 24-10-106(1)], a public entity lacks immunity, not because it
 necessarily causes a dangerous condition, but
 because it is in a position to discover and correct the
 condition.").
 
 
          ¶27
 It was therefore appropriate for the district court to rely
 on negligence principles, including the reasonableness of the
 County's response to the spill, to determine whether the
 County's failure to warn of or to clean up the spill was
 a negligent omission under the circumstances. See,
 e.g., Greenberg v. Perkins, 845 P.2d 530,
 533-34 (Colo. 1993) (stating the elements of a prima facie
 case for negligence, which include whether the defendant
 acted reasonably). The district court concluded that if the
 County wasn't afforded "a reasonable time under the
 circumstances to discover and correct the condition,"
 its omission wasn't negligent, and the spill wasn't a
 "dangerous condition." See Safeway Stores, Inc.
 v. Smith, 658 P.2d 255, 257 (Colo. 1983).
 
 
          ¶28
 The division's reliance on Tidwell to conclude
 otherwise was misplaced. In Tidwell, we explained
 that "a waiver will exist where a plaintiff alleges
 facts proving a minimal causal connection between the
 injuries and the specified conduct." 83 P.3d at 86. But
 we weren't interpreting the definition of "dangerous
 condition" under section 24-10-103(1.3); instead, we
 were interpreting the phrase "resulting from" in
 section 24-10-106(1). Tidwell, 83 P.3d at 86
 ("[U]nder subsection (1) of 24-10-106, [the plaintiff]
 was required to offer evidence proving
 
 16
 
 that he suffered from 'injuries resulting from'
 conduct enumerated by subparts (a) through
 (f)."). And even if that interpretation were
 applicable here, it doesn't help Dozier because, before
 we may consider whether Dozier's injuries
 "result[ed] from" a "dangerous
 condition," she must first prove that the spill
 was a "dangerous condition."
 
 
          ¶29
 We also reject Dozier's argument that the district court
 erred by relying on section 24-10-106(1)(d)(I) and
 (III)'s reasonable-time-to-act language in considering
 the "dangerous condition" test's fourth factor.
 See § 24-10-106(1)(d)(I) (waiving CGIA immunity
 for injuries resulting from certain "dangerous
 condition[s]" of public roads and sidewalks); §
 24-10-106(1)(d)(III) (waiving CGIA immunity for injuries
 resulting from certain "dangerous condition[s] caused by
 an accumulation of snow and ice" on public walkways). As
 we've explained, the fourth factor incorporates prima
 facie negligence principles, of which reasonableness is the
 cornerstone. Further, the "dangerous condition"
 test explicitly includes consideration of reasonableness.
 § 24-10-103(1.3) ("[W]hich [condition] is known to
 exist or which in the exercise of reasonable care
 should have been known to exist . . . ." (emphasis
 added)). Accordingly, neither we nor the district court
 improperly added language from section 24-10-106 to section
 24-10-103; rather, we simply applied common-law principles to
 interpret a common-law term. See Allen v. People,
 485 P.2d 886, 887-88 (Colo. 1971) ("[T]he
 
 17
 
 common law may be used in aid of the meaning to be given
 statutory language, when such language is not defined in the
 statute.").
 
 
          ¶30
 Although we resolve this case under the CGIA's plain
 language, we further note that the division's
 interpretation could lead to absurd results. If the
 reasonableness of a public entity's response were
 irrelevant, a plaintiff could overcome immunity and proceed
 to trial despite being injured by a condition only seconds
 after the public entity learned of it. Such a result is not
 only illogical, it's antithetical to the CGIA's
 purpose to "protect the taxpayers against excessive
 fiscal burdens" that could arise from "unlimited
 liability." § 24-10-102, C.R.S. (2024).
 
 
          ¶31
 Finally, we conclude that the disputed jurisdictional facts
 are inextricably intertwined with the merits of Dozier's
 claim. Whether the County's failure to act was a
 negligent omission is at the heart of the merits. Under
 Colorado's premises liability statute, Dozier would have
 to prove that the County didn't exercise reasonable care
 to prevent her accident to prevail on her underlying claim.
 § 13-21-115(4)(c)(I), C.R.S. (2024); see also Vigil
 v. Franklin, 103 P.3d 322, 326 (Colo. 2004).
 
 
          ¶32
 Accordingly, to establish waiver under the CGIA's
 dangerous-condition exception, the plaintiff must demonstrate
 that it was likely that the public entity's negligent act
 or omission proximately caused the allegedly dangerous
 condition.
 
 18
 
 And, as the district court acknowledged, the reasonableness
 of the public entity's response is relevant to that
 inquiry.
 
 
          ¶33
 With this framework in mind, we consider whether Dozier
 proved the existence of a "dangerous condition."
 
 
          D.
 Whether the County's Negligent Omission Proximately
 Caused the Spill
 
 
          ¶34
 The district court found that only a few minutes had elapsed
 between the County learning of the spill and Dozier falling.
 But instead of relying on this finding, and without
 determining that the district court's finding was clearly
 erroneous, the division relied on Dozier's allegations to
 conclude that she had sufficiently established that the
 County's negligent maintenance of the courthouse
 proximately caused her injuries. Dozier, ¶ 18.
 This was error.
 
 
          ¶35
 Because the district court's temporal finding is
 supported by the record, that finding isn't clearly
 erroneous. The employee who reported the spill, Kim Knight,
 testified that she learned of the spill at "about 12:10
 [p.m.] or so" and called facilities. She further
 testified that she received an email from facilities
 management confirming her request at 12:12 p.m. and that
 Dozier was sitting on the floor when she went to lunch at
 12:15 p.m.
 
 
          ¶36
 While Dozier argues that the district court disregarded the
 "undisputed fact that 'another county
 employee,'" Debbie Platten, told Knight about the
 spill, she offered no evidence about when Platten learned of
 the spill, a fact as to which she
 
 19
 
 bore the burden of proof. Knight testified that "[a]s
 soon as [Platten] walked in the door, she told [Knight] that
 there was a spill" approximately twenty feet from
 Knight's office door. Knight said that she didn't
 know how Platten learned of the spill. Even after drawing all
 reasonable inferences in Dozier's favor, as the district
 court must do when the evidence is undisputed, we can't
 conclude that the court's finding was clearly erroneous
 without some evidence of when or how Platten learned
 of the spill.
 
 
          ¶37
 Moreover, accepting the district court's factual finding
 that only a few minutes had passed between the County
 learning of the spill and Dozier's fall, we agree with
 the district court's legal conclusion that the County
 didn't have a reasonable time to warn of or to clean up
 the spill before Dozier fell. See, e.g., Miller
 v. Crown Mart, Inc., 425 P.2d 690, 692-93 (Colo. 1967)
 (concluding as a matter of law that a store owner didn't
 have a reasonable time to discover and clean up popcorn
 kernels where they were only on the floor "for something
 less than five minutes" before the plaintiff fell).
 
 
          ¶38
 Therefore, in this case with disputed jurisdictional facts
 that are inextricably intertwined with the merits, we
 conclude that Dozier failed to establish that it was likely
 that the County's failure to warn of or to clean up the
 spill was a negligent omission that proximately caused the
 condition. Accordingly, she failed to prove that the County
 waived immunity.
 
 20
 
          III.
 Conclusion
 
 
          ¶39
 We reverse the judgment of the court of appeals, and we
 reinstate the district court's order dismissing
 Dozier's complaint.
 
 
 ---------
 
 
 Notes:
 
 
 [1] We granted certiorari to review the
 following two issues:
 
 
 1. Whether, for purposes of analyzing whether a waiver
 of immunity exists based on a "dangerous
 condition," the reasonableness of a public entity's
 response to a spill on its floors is a jurisdictional fact
 that must be proved by a preponderance of the
 evidence.
 
 
 2. Whether the court of appeals erred in determining
 that Plaintiff's contested allegations that her injury
 was proximately caused by the County's failure to
 maintain a public building sufficiently established that her
 injuries resulted from a dangerous condition.
 
 
 [2] Other federal circuit courts of
 appeals have concluded that a district court should assume
 jurisdiction exists and treat "'the objection as a
 direct attack on the merits of the plaintiff's case'
 under either [Fed. R. Civ. P.] 12(b)(6), [a motion to dismiss
 for failure to state a claim,] or [Fed. R. Civ. P.] 56[,] [a
 summary judgment motion]," to offer the plaintiff
 "'a greater level of protection.'"
 Montez v. Dep't of Navy, 392 F.3d 147, 150 (5th
 Cir. 2004) (quoting Williamson v. Tucker, 645 F.2d
 404, 415 (5th Cir. 1981)); accord Kerns v. United
 States, 585 F.3d 187, 193 (4th Cir. 2009); Augustine
 v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983);
 Tippett v. United States, 108 F.3d 1194, 1196 (10th
 Cir. 1997); Lawrence v. Dunbar, 919 F.2d 1525, 1530
 (11th Cir. 1990). Although we've rejected this approach,
 Dennis, ¶ 9, 418 P.3d at 494 (concluding that
 "C.R.C.P. 12(b)(1) is the correct standard of
 review" to resolve "immunity questions which
 implicate tort concepts"), we nevertheless find it
 compelling that these courts share our concerns with
 requiring the plaintiff to prove jurisdiction by a
 preponderance of the evidence when "issues of fact are
 central both to subject matter jurisdiction and the claim on
 the merits," Montez, 392 F.3d at 150.
 
 
 ---------