U.S.S. YACHTS, INC.,
Plaintiff, Appellant,

v.

OCEAN YACHTS, INC.,
Defendant, Appellee.

Nos. 88–2240, 89–1728.

United States Court of Appeals,
First Circuit.

Heard Nov. 2, 1989.
Decided Jan. 18, 1990.

David Efron, Rio Piedras, P.R., with whom Rolando A. Silva and Bernardo Vazquez, Rio Piedras, P.R., were on brief, for plaintiff, appellant.

Freddie Perez–Gonzales with whom Woods Rosenbaum Luckeroth & Perez–Gonzalez, San Juan, P.R. was on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and FUSTE,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

The district court dismissed the present action for lack of personal jurisdiction over defendant Ocean Yachts, Inc. We affirm.

The relevant facts derived from the pleadings and affidavits are as follows. On July 6, 1984, Robert C. Buckley, president of plaintiff U.S.S. Yachts, Inc., a corporation of Florida and the Cayman Islands, British West Indies, sent a letter from his Grand Cayman office to the New Jersey office of defendant Ocean Yachts, Inc. (Ocean).[1] In the letter, Buckley requested designation as an Ocean dealer in the British West Indies and Puerto Rico. He informed Ocean, however, that it should write to him only at his Grand Cayman address. Accompanying the letter was a stock order for three Ocean Yachts and a security deposit of $20,000.

During the next three months, Buckley and Ralph Leek, an Ocean officer, negotiated by telephone between New Jersey, Florida, and the British West Indies. In the course of these negotiations, the parties agreed that U.S.S. Yachts would be authorized as an Ocean dealer in the British West Indies. On October 30, 1984, Leek sent to Buckley's Grand Cayman address a letter formally authorizing U.S.S. Yachts as an Ocean dealer.

On November 1, 1984, Buckley bought his first yacht from Ocean for shipment to Grand Cayman. Although U.S.S. Yachts alleges that it later sold the boat in Puerto Rico, the district court found that this allegation was not adequately supported by the pleadings and affidavits. The court instead accepted as true Ocean's allegation that Buckley sold the yacht in Miami, Florida to a resident of Puerto Rico. We decline to disturb the district court's finding on this matter.

On November 9, 1984, Leek sent to Buckley's temporary Puerto Rico address a letter extending U.S.S. Yachts's exclusive Ocean dealership to the Virgin Islands and Puerto Rico. The letter further stated that Ocean reserved the right to replace U.S.S. Yachts as an Ocean dealer if U.S.S. Yachts failed to purchase a minimum of four Ocean boats per year.

On January 10, 1985, Buckley bought his second yacht from Ocean for shipment to Grand Cayman. He subsequently sold the yacht in Miami to a resident of South Carolina. Soon thereafter, in a letter sent to Buckley at another temporary Puerto Rico address, Ocean granted U.S.S. Yachts a five percent commission credit.

On June 13, 1985, Leek sent Buckley a letter to a third temporary address in Puerto Rico, informing him that because he had sold and docked Ocean boats in the United States in violation of their agreement (U.S.S. Yachts contests Ocean's version of the terms of the agreement) U.S.S. Yachts was being terminated as an authorized dealer of Ocean Yachts. The $20,000 deposit was returned.

U.S.S. Yachts then brought this diversity action against Ocean in the District Court

---

* Of the District of Puerto Rico, sitting by designation.

1. Ocean is a mainland corporation chartered in New Jersey. It does not maintain an office in Puerto Rico, do business there or have any contacts there except as may hereinafter be described.

for the District of Puerto Rico, alleging that Ocean had unjustly terminated the dealership agreement, thereby violating the Dealers' Act of Puerto Rico, 10 L.P.R.A. §§ 278–278d. After finding that U.S.S. Yachts had failed to establish the requisite "minimum contacts" between Ocean and Puerto Rico, the district court granted Ocean's motion to dismiss for lack of personal jurisdiction. U.S.S. Yachts brought a motion for reconsideration, which the district court denied.

When challenged, the plaintiff has the burden of proving the court's jurisdiction over the defendant. *See Gray v. O'Brien,* 777 F.2d 864, 866 (1st Cir.1985) (per curiam). To meet its burden, the plaintiff must establish sufficient facts to support a prima facie case authorizing personal jurisdiction over the defendant under both the forum's long-arm statute and the due process clause of the Constitution. *See American Express International, Inc. v. Mendez–Capellan,* 889 F.2d 1175, 1179 (1st Cir.1989).

The long-arm statute applicable here is Rule 4.7 of the Puerto Rico Rules of Civil Procedure, which provides in pertinent part that:

(a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:

(1) Transacted business in Puerto Rico personally or through an agent; or

(2) *Participated in tortious acts within Puerto Rico* personally or through his agent....

P.R.Laws Ann. app. III, Rule 4.7(a)(1), (2) (1979) (emphasis added). U.S.S. Yachts argues that Ocean "[p]articipated in tortious acts within Puerto Rico" when it cancelled the dealership agreement in June of 1985. According to U.S.S. Yachts, the allegedly unjust cancellation constituted a tortious act under the Dealers' Act of Puerto Rico. *See* 10 L.P.R.A. § 278b ("If no just cause exists for the termination of the dealer's contract ..., the principal shall have executed a tortious act against the dealer ..."). We need not decide, however,

whether U.S.S. Yachts has established a prima facie case authorizing personal jurisdiction over Ocean under Puerto Rico's long-arm statute. Even if Ocean allegedly participated in a tortious act within Puerto Rico for purposes of Puerto Rico's long-arm statute, the assertion of personal jurisdiction over Ocean by the district court would offend due process. *Cf. Eveland v. Director of C.I.A.,* 843 F.2d 46, 50 (1st Cir.1988) ("Without discussing whether the requirements of the long-arm statute have been met, we find that defendants lack the constitutionally required 'minimum contacts' with Massachusetts to support an assertion of jurisdiction over them by the district court.").

The due process clause of the Constitution requires that before a defendant can be brought into a forum's court, two conditions must be met. First, the defendant must have purposely established "minimum contacts" with the forum such that he can reasonably anticipate being haled into that forum's court. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1984) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)); *Keds v. Renee International Trading Corp.,* 888 F.2d 215, 219 (1st Cir.1989). Second, if such contacts exist, the exercise of personal jurisdiction over the defendant must comport with "fair play and substantial justice." *Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. at 2184 (1984) (quoting *International Shoe Co.,* 326 U.S. at 320, 66 S.Ct. at 160); *Keds,* 888 F.2d at 219–20.

Here, Ocean's only contacts with the forum were three letters sent by Ocean from its New Jersey office to U.S.S. Yachts in Puerto Rico: (1) the letter extending the dealership to Puerto Rico; (2) the letter granting the commission credit; and (3) the letter cancelling the dealership. Of the three, the letter designating U.S.S. Yachts as the exclusive Ocean Yachts dealer in Puerto Rico evidences Ocean's most significant contact with Puerto Rico. In that letter, Ocean granted U.S.S. Yachts permission to expand its dealership territory from

the British West Indies to take in both Puerto Rico and the Virgin Islands. We must consider whether this permitted extension established a sufficient connection between Ocean and Puerto Rico such that Ocean could have reasonably anticipated being haled into Puerto Rico courts.

We note initially that Ocean's extension of the dealership, like most contracts, was "but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1984) (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 317, 63 S.Ct. 602, 605, 87 L.Ed. 777 (1943)). Accordingly, we analyze the extension and its effects in light of the following three factors: (1) the prior negotiations between the parties and the contemplated future consequences of the extension; (2) the terms of the extension; and (3) the parties' actual course of dealing. *See id.* This multi-factored analysis requires us to examine "all the communications and transactions between the parties, before, during and after the consummation of the contract, to determine the degree and type of contacts the defendant has with the forum, apart from the contract alone." *Ganis Corp. of California v. Jackson*, 822 F.2d 194, 197–98 (1st Cir. 1987).

Ocean and U.S.S. Yachts conducted prior negotiations via telephone and the mails between the British West Indies, Florida, and New Jersey—none of these preliminary phone calls or letters originated in or were sent to Puerto Rico. The contemplated future consequences of the extension were that Ocean would have a marketing outlet for its boats, through U.S.S. Yachts, in Puerto Rico, as well as in the Virgin Islands and the British West Indies. The extent of Ocean's future connection with Puerto Rico as a result of the extension, however, remained uncertain under the terms of the dealership extension letter. The extension letter included a term requiring U.S.S. Yachts to sell a minimum of four yachts per year. If U.S.S. Yachts failed to achieve this sales quota, Ocean

reserved the right to cancel the agreement. The sales could take place anywhere in the dealership territory granted to U.S.S. Yachts: U.S.S. Yachts was not *required* to sell any of the yachts in Puerto Rico. Thus, while the extension allowed U.S.S. Yachts to sell yachts for Ocean in Puerto Rico (for at least one year), it did not necessarily signal that U.S.S. Yachts would do so or, indeed, would initiate marketing efforts there of any kind that would affect Ocean.

The parties' actual course of dealings reveals that during the time the extension was in effect neither party had any significant contact with Puerto Rico. During that time, Ocean engaged in no activities whatsoever in Puerto Rico, and U.S.S. Yachts's dealership was, as the district court found, only in its "fetal stages." Robert Buckley, the President of U.S.S. Yachts, referred to his activities during that time as having "the purpose of establishing the *eventual* Ocean Yachts, Inc. dealership in Puerto Rico." These activities, such as U.S.S. Yachts's signing of a lease agreement for an office in a marina in Puerto Rico and its placement of ads in newspapers there, do not substantially bolster Ocean's contacts with the forum. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873–74, 80 L.Ed.2d 404 (1983) (stating that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.").

Upon review of the above factors, we find that the contractual relationship between Ocean and U.S.S. Yachts demonstrates that Ocean's contacts with the forum are too minimal and attenuated to support the exercise of personal jurisdiction over Ocean within the bounds of due process. *See Dalmau Rodriguez v.*

*Hughes Aircraft Company*, 781 F.2d 9, 15 (1st Cir.1986) (refusing to exercise personal jurisdiction over a California company when that company's only contacts with Puerto Rico were the submission of a bid, a trip by an employee for technical help and advice, and a visit by a sales representative); *cf. American Express International, Inc. v. Mendez–Capellan*, 889 F.2d 1175, 1178–81 (1st Cir.1989) (refusing to exercise personal jurisdiction over citizen of Dominican Republic when his only contacts with Puerto Rico were the establishment of two bank accounts and some dealings with plaintiff's former Puerto Rico office which were unrelated to plaintiff's cause of action).

Further, because we see no justifiable reason for compelling Ocean to defend the instant action in Puerto Rico, we find that the assertion of personal jurisdiction over Ocean in Puerto Rico would not comport with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1984) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)).

*The district court's judgment is therefore affirmed.*[2]

2. U.S.S. Yachts's motion to strike Ocean's sup-plementary appendix is granted.