March 3, 1993
United States Court of Appeals
For the First Circuit

No. 92-1865

UNITED ELECTRICAL RADIO AND MACHINE WORKERS
OF AMERICA (UE)., ET AL.,

Plaintiffs, Appellants,

v.

163 PLEASANT STREET CORPORATION, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. A. David Mazzone, U.S. District Judge]

Before

Torruella, Circuit Judge,

Bownes, Senior Circuit Judge,

Stahl, Circuit Judge.

Mark D. Stern with whom Brian W. Mellor, Mary Leary, and Edward

J. Dailey were on brief for appellants.

David D. Cole on brief for Barney Frank, Gerry E. Studds, Chester

G. Atkins, Joseph D. Early, Joseph P. Kennedy, II, Edward J. Markey,
Nicholas Mavroules, John Joseph Moakley, Richard E. Neal, John W.
Oliver, and Senators Edward M. Kennedy and John F. Kerry, amici
curiae.
Charles L. Janes with whom James C. Stokes and Bingham, Dana &

Gould were on brief for appellees.

March 3, 1993

STAHL, Circuit Judge. This appeal requires us to

decide for a second time1 whether plaintiffs-appellants

("plaintiffs") have sufficiently demonstrated that the

district court has personal jurisdiction over the primary

defendants-appellees ("defendants") to this action to pursue

their claims under the Employee Retirement Income Security

Act ("ERISA"), 29 U.S.C.A. 1001-1461 (West 1985 & Supp.

1992), the Labor-Management Relations Act ("LMRA"), 29

U.S.C.A. 141-187 (West 1973 & Supp. 1992), and

Massachusetts common law. Finding that plaintiffs' showing

at this stage of the litigation is adequate to meet the

relevant legal standard, we vacate the district court's order

of dismissal and remand this action for further proceedings.

I.

PROCEDURAL BACKGROUND

We begin our analysis with a recounting of the

already eventful procedural history of this litigation.

Plaintiffs are the United Electrical, Radio and Machine

Workers of America ("the Union") and certain retired or

disabled employees of the defendant corporations or one of

these corporations' predecessor-in-interest.2 On July 19,

1. See generally United Elec., Radio and Mach. Workers of

America v. 163 Pleasant Street Corp., 960 F.2d 1080 (1st Cir.

1992) (hereinafter referred to as "163 Pleasant Street I").

2. One plaintiff is the surviving spouse of a deceased
retired employee of the defendant corporations.

-2-
2

1991, plaintiffs initiated these proceedings by suing

defendants International Twist Drill (Holdings), Ltd.

("ITDH"), 163 Pleasant Street Corporation ("PSC"), a

Massachusetts subsidiary of ITDH,3 and Blue Cross/Blue

Shield of Massachusetts ("BCBS"). At issue was whether

defendants were contractually bound to provide plaintiffs

with medical and life insurance.4 In their complaint,

plaintiffs sought both damages and equitable relief. As part

of the equitable relief sought, plaintiffs requested that

the district court enter a preliminary injunction directing

defendants to continue paying plaintiffs' insurance premiums

pendente lite.

On July 24, 1991, the district court, after hearing

oral argument, granted plaintiffs' request for a temporary

restraining order preserving the status quo until a hearing

on plaintiffs' request for a preliminary injunction could be

arranged. On August 13, 1991, the district court heard oral

3. Prior to 1991, PSC was known as Morse Tool, Inc. Because
this fact is not relevant to this appeal, and in order to
identify the parties in a consistent fashion, we refer to the
company as PSC even when describing events that occurred
while the company was still Morse Tool, Inc.

4. Specifically, plaintiffs alleged that they were either
signatories to or beneficiaries of agreements, including a
collective bargaining agreement between PSC and the Union,
under which PSC contracted to provide them with the
aforementioned insurance "for life." They further contended
that, for a variety of reasons, ITDH, which owned and
controlled the now defunct PSC, was liable for these
contractual obligations despite the fact that its name did
not appear upon these agreements.

-3-
3

argument on plaintiffs' request for a preliminary injunction

and on a motion to dismiss for lack of personal jurisdiction

filed by ITDH on August 6. That same day, the district court

granted plaintiffs' request for a preliminary injunction5

and denied ITDH's motion. On August 22, 1991, PSC filed for

bankruptcy without paying the disputed premiums. After ITDH

also refused to pay the premiums, the district court issued

an order holding ITDH in contempt. Subsequently, ITDH

appealed the preliminary injunction and the contempt orders.

During the pendency of ITDH's appeals, however,

discovery was proceeding in the underlying case. As a result

of information obtained in the course of this discovery,

plaintiffs moved to amend their complaint in order to join

International Twist Drill ("ITD") as a defendant and to

include additional (at least insofar as ITDH is concerned)

allegations against the ITD companies.6 Plaintiffs' motion

was allowed on January 23, 1992. Meanwhile, each side

continued to supplement the record by filing with the

district court further documentation in the form of

5. Specifically, the district court ordered that "[PSC],
initially, and [ITDH], secondarily, . . . make whatever
payments are necessary to continue the medical insurance
coverage of these plaintiffs until final judgment is entered
in this case."

6. ITD, a subsidiary of ITDH, was not a party when ITDH took
its appeal of the preliminary injunction and contempt orders.
Therefore, all uses of the acronym "ITD" made in 163 Pleasant

Street I should be construed as being references to ITDH.

-4-
4

affidavits and otherwise. Because of the timing of these

filings, this material was not part of the record in ITDH's

initial appeal.

On March 30, 1992, this court handed down 163

Pleasant Street I, which vacated the district court's

injunction and contempt orders. In so doing, we did not

reach the merits of the lower court's decisions. Rather, we

found that plaintiffs had not established that the court had

personal jurisdiction over ITDH. Accordingly, we directed

that the preliminary injunction and contempt orders be

vacated and remanded the case "for further proceedings not

inconsistent [with our opinion]." Id. at 1099.

After publication of 163 Pleasant Street I, ITDH

and ITD filed a joint motion to dismiss for lack of personal

jurisdiction, incorporating by reference our opinion of March

30, 1992. Plaintiffs opposed the motion, relying upon

allegations in their recently amended complaint and upon

materials not part of the record in 163 Pleasant Street I.

On May 8, 1992, the district court issued a two-page

memorandum and order granting ITDH's and ITD's motion.7 The

memorandum and order stated: "[Each] issue and theory upon

which plaintiffs' claims rest has been thoroughly analyzed

and addressed in the decision of the Court of Appeals. There

7. Although entered on May 8, 1992, the memorandum and order
was dated May 4, 1992.

-5-
5

is nothing to be gained from prolonging this case further."

Plaintiffs moved for reconsideration of the district court's

order, again directing the court's attention to materials

made part of the record after ITDH had taken its initial

appeal and other materials filed by plaintiffs on May 8,

1992. By margin order entered June 24, 1992, the district

court denied plaintiffs' motion.8 Plaintiffs now appeal the

district court's order of dismissal and denial of their

motion for reconsideration.

II.

DISCUSSION

Because 163 Pleasant Street I exhaustively

delineated both the facts underpinning this dispute and the

law implicated by its resolution, we do not engage in rehash

here. Suffice it to say that the question of whether, at this

stage of the litigation, plaintiffs have made a sufficient

showing that ITDH and ITD, both Scottish corporations, are

subject to the personal jurisdiction of the district court

hinges upon whether there is adequate record evidence that

the two entities (1) "transact[ed]. . . business in

8. Although resolution of plaintiffs' motion by margin order
contravened the separate document requirement of Fed. R. Civ.
P. 58, see Fiore v. Washington County Community Mental Health

Ctr., 960 F.2d 229, 234-36 (1st Cir. 1992), we deem

plaintiffs' appeal, which is timely when viewed against the
date the order was entered, to be a waiver of the
requirement. See Bankers Trust Co. v. Mallis, 435 U.S. 381,

387-88 (1978); Fiore, 960 F.2d at 236 n.10.

-6-
6

[Massachusetts]," thus subjecting them to the Commonwealth's

long-arm statute, see Mass. Gen. Laws Ann. ch. 223A, 3(a)

(West 1985 & Supp. 1992), and (2) have acted in such a manner

that the district court's exercise of jurisdiction over them

would not offend the constitutionally anchored "minimum

contacts" rule. See International Shoe Co. v. Washington,

326 U.S. 310, 316 (1945).9

9. In 163 Pleasant Street I, though we observed that "the

lower court's ruling that ITD[H] was `transacting business'
in Massachusetts is likely sustainable," see 163 Pleasant

Street I, 960 F.2d at 1087, we did not determine whether ITDH

was subject to the Commonwealth's long-arm statute as we
found that the minimum contacts rule was not satisfied. In
so doing, we began by noting that ITDH's contacts with
Massachusetts were "manifestly insufficient to ground a claim
of general jurisdiction. . . ." Id. at 1088. Next, we

distilled the jurisprudence governing the ascertainment of
specific jurisdiction (which, along with general
jurisdiction, is one of the two types of personal
jurisdiction we have recognized in analyzing minimum
contacts) into the following tripartite test: (1) the claim
underlying the litigation must directly arise out of, or
relate to, the defendant's forum-state activities, (2) the
defendant's in-state contacts must represent a purposeful
availment of the privilege of conducting activities in the
forum state, thereby invoking the benefits and protections of
that state's laws and making the defendant's involuntary
presence before the state's courts foreseeable, and (3) the
exercise of jurisdiction must, in light of five specified
criteria for evaluating the fairness of subjecting a
nonresident to the authority of a foreign tribunal
(collectively dubbed the "Gestalt factors"), be reasonable.
See id. at 1088-89.

In applying the specific jurisdiction test, we first
found that, of the forum-related contacts between ITDH and
the Commonwealth mentioned by the district court in the
August 13, 1991, hearing, only the involvement of John
Lindsay, an ITDH principal, in negotiating the collective
bargaining agreement at the heart of this litigation could be
thought of as giving rise to, or relating to, this cause of
action. Id. at 1089. Limiting our inquiry to this contact,

we then determined that the evidence surrounding Lindsay's

-7-
7

In arguing that the above question should be

answered in the affirmative, plaintiffs contend that our

analysis in 163 Pleasant Street I has been rendered obsolete

by additions to the record which occurred while the first

appeal was pending. As a result, plaintiffs assert, the

district court's uncritical reliance upon our previous

opinion was in error.10 We agree with plaintiffs'

position.

involvement was insufficient for us to determine "that
ITD[H], through its own affirmative conduct, purposefully
availed itself of the privilege of conducting activities in
Massachusetts. . . ." Id. at 1090-91. Central to this

determination was the lack of record evidence suggesting that
the negotiations over the collective bargaining agreement
and, a fortiori, Lindsay's participation therein took place

in Massachusetts. Id. at 1090. Accordingly, we held that

the constitutionally required minimum contacts between ITDH
and Massachusetts were not present and declined to address
the question of reasonableness in light of the Gestalt
factors. See id. at 1090 n.11.

10. In response to plaintiffs' argument, defendants do not
attempt to demonstrate that the current record is
insufficient to support an exercise of personal jurisdiction
over them. Rather, defendants essentially argue (1) that
ITDH and ITD should not be held liable, through corporate
veil piercing, for PSC's contractual obligations, and (2)
that the materials submitted to the district court on May 8,
1992, were submitted after the order of dismissal and
therefore should not be considered by us in this appeal.
Though defendants' first argument ultimately may prove
meritorious, it has no bearing on the question raised in the
instant appeal. Accordingly, we do not discuss it.
Moreover, because, as will be more fully explained infra, we

find that the record was sufficient for the court to exercise
personal jurisdiction over ITDH and ITD even before the
documents submitted on May 8, 1992, were made a part thereof,
we need notreach the merits of defendants' second argument.

-8-
8

Where, as here, a district court elects to dispose

of a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of

personal jurisdiction without holding an evidentiary

hearing,11 the "prima facie" standard should govern the

court's review. See Boit, 967 F.2d at 675; Kowalski v.

Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir.

1986). Under this standard, it is plaintiff's burden to

demonstrate the existence of "every fact required to satisfy

`both the forum's long-arm statute and the [D]ue [P]rocess

[C]lause of the Constitution.'" Boit, 967 F.2d at 675

(quoting U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d

9, 11 (1st Cir. 1990)).

The prima facie showing must be based upon evidence

of specific facts set forth in the record. Boit, 967 F.2d at

11. During the course of oral argument at the August 13,
1991, hearing on ITDH's initial Rule 12(b)(2) motion, the
district court did make reference to certain affidavits which
had been introduced into the record at that time and did
allow counsel for ITDH to speak on the issue of personal
jurisdiction. (Plaintiffs' counsel did not address the court
on this issue because the court found in plaintiffs' favor at
the conclusion of ITDH's presentation.) Also, in determining
that it had personal jurisdiction over ITDH, the court
indicated that it so found by "clear and convincing
evidence." Therefore, it appears that the August 13, 1991,
hearing was a limited evidentiary hearing. See Boit v. Gar-

Tec Products, Inc., 967 F.2d 671, 676 (1st Cir. 1992)

(evidentiary hearings need not involve evidence taken orally
in open court, but may proceed with all evidence being
introduced by means of affidavits, authenticated documents,
answers to interrogatories or requests for admissions, and
depositions, and with findings being made under a
preponderance-of-the-evidence-standard). However, it is
apparent from the record that no evidentiary hearing was held
on the joint motion to dismiss filed by ITDH and ITD.

-9-
9

675; Kowalski, 787 F.2d at 9. This means that plaintiff

"`must go beyond the pleadings and make affirmative proof.'"

Boit, 967 F.2d at 675 (quoting Chlebda v. H.E. Fortna & Bro.,

Inc., 609 F.2d 1022, 1024 (1st Cir. 1979)). However, in

determining whether the prima facie demonstration has been

made, the district court is not acting as a factfinder;

rather, it accepts properly supported proffers of evidence by

a plaintiff as true and makes its ruling as a matter of law.

See Boit, 967 F.2d at 675; see also Kowalski, 787 F.2d at 9.

Therefore, appellate review of such a ruling is

nondeferential and plenary. See Boit, 967 F.2d at 675.

Leaving aside the material which was filed on May

8, 1992, see supra note 10, we believe that the effect of two

additions to the record made by plaintiffs while the first

appeal was pending is such that, applying the prima facie

standard, the district court should have denied the joint

motion to dismiss filed by ITDH and ITD. First, in their

amended complaint, plaintiffs had made the following new

allegations:

3. . . . [T]he plaintiff retirees were
employed at the defendant corporations'
plant in New Bedford, Massachusetts, the
obligations to provide insurance were
incurred in Massachusetts, and the
termination of the insurance giving rise
to this claim occurred in this District.

14. The defendant [ITDH] of Scotland is
incorporated in Great Britain and was
doing business as Morse Tool, Inc. in the
Commonwealth of Massachusetts prior to

-10-
10

and up to the time of the closure of its
New Bedford facility in January[] 1990.
It is the sole shareholder in the
defendant [PSC].

15. The defendant [ITD] of Scotland is
incorporated in Great Britain and was
doing business as Morse Tool, Inc. in the
Commonwealth of Massachusetts prior to
and up to the time of the closure of its
New Bedford Facility in January 1990. It
is owned and controlled by the defendant
ITDH.

17. At all relevant times the defendants
constituted an integrated enterprise
and/or single employer doing business in
the Commonwealth of Massachusetts.

18. At all relevant times the defendants
ITDH and/or ITD constituted the alter ego
of the defendant [PSC].

19. At all relevant times the defendants
ITDH and/or ITD jointly employed the
plaintiffs along with the defendant
[PSC].

20. . . . The most recent collective
bargaining agreement between plaintiffs
and defendant corporations covers the
period from May 1987 through May 1990. .
. . [The collective bargaining agreement]
was negotiated for the defendants by an
agent of the defendant ITD, acting for
and on behalf of the defendant ITDH.

Moreover, on April 16, 1992, plaintiffs had introduced an

affidavit of Dennis Brady, a Union officer and member of the

Union negotiating team, which contained the following

assertions:

3. All the negotiations between [the
Union] and [ITDH and ITD] occurred in New
Bedford, Massachusetts. . . .

-11-
11

5. Raymond Zemon [sic] was the primary
negotiator of the collective bargaining
agreement. He acted on behalf of [ITDH
and ITD]. . . .

6. During the negotiations Raymond Zemon
[sic] would often make telephonic contact
from Massachusetts with individuals in
Scotland before agreeing to any
proposals. . . .12

Simply put, we believe that the combination of the

complaint amendments and the Brady affidavit is sufficient to

cure the deficiency -- i.e., that ITDH had not purposely

availed itself of the privilege of conducting activities in

Massachusetts -- on which our holding in 163 Pleasant Street

I was premised. As noted above, see supra note 9, the only

record evidence before us in 163 Pleasant Street I which was

even remotely relevant to the purposeful availment inquiry

was the fact that John Lindsay had some "involvement in" the

negotiation of the collective bargaining agreement. See 163

Pleasant Street I, 960 F.2d at 1090. The record did not

reveal where Lindsay was located during the period of his

involvement Id. Indeed, the record did not even indicate

where the negotiations had taken place. Id.

12. Further support for the allegation that the collective
bargaining agreement between the Union and PSC actually was
negotiated by Raymond Zeman acting on behalf of ITDH and ITD
can be found in the agreement itself. The first paragraph of
the agreement contains the following provision: "This
Agreement is contingent upon and will not become effective
until [PSC] is purchased by Scottish interests presently
represented by Zeman International." The agreement then is
signed by Raymond Zeman on behalf of Zeman International.

-12-
12

After remand, however, the record before the

district court was significantly less enigmatic than that

before us in 163 Pleasant Street I. It now contained an

affirmative allegation that the collective bargaining

agreement was negotiated "for the defendants by an agent of

ITD, acting for and on behalf of defendant ITDH."13 More

significantly, the record also contained "affirmative proof,"

see Boit, 967 F.2d at 675, tending to support this allegation

and plaintiffs' claim that the aforementioned negotiations

took place in the Commonwealth of Massachusetts.

We think that this is sufficient. If true,

plaintiffs' evidence tends to show that, at the time the

collective bargaining agreement between PSC and the Union was

being negotiated, (1) ITDH and ITD were actively engaged in

the process of purchasing PSC, a Massachusetts corporation,

(2) ITD, acting on behalf of ITDH, had retained an agent to

negotiate the agreement, the efficacy of which was made

contingent upon ITDH's and ITD's subsequent purchase of PSC,

(3) the negotiations took place in Massachusetts, and (4) the

agent often called "individuals in Scotland" from

Massachusetts before agreeing to any proposals. In our view,

such activity within Massachusetts cannot be viewed as

13. As our earlier opinion noted, the contacts of a
corporation's agent obviously can subject the corporation to
the personal jurisdiction of the forum in which those
contacts occur. See id.

-13-
13

"random, fortuitous, or attenuated." Cf. Burger King Corp.

v. Rudzewicz, 471 U.S. 462, 475 (1985) ("Th[e] purposeful

availment requirement ensures that a defendant will not be

haled into a jurisdiction solely as a result of random,

fortuitous, or attenuated contacts. . . .") (quoting Keeton

v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984) and

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 299

(1980)) (internal quotation marks omitted). Rather, we

believe that it is more accurately characterized as a

deliberate engagement in significant activities within

Massachusetts, and thus a purposeful availment of the

privilege of conducting activities within the Commonwealth,

making involuntary presence before a Massachusetts court a

reasonably foreseeable event. See Burger King, 471 U.S. at

474-76. Accordingly, we hold that plaintiffs have met their

prima facie burden of demonstrating the existence of

sufficient facts to meet the second prong of the tripartite

specific jurisdiction test announced in our previous opinion.

See 163 Pleasant Street I, 960 F.2d at 1089.14

This conclusion does not end our inquiry. As

previously noted, see supra note 9, because we found

14. Obviously, the evidence that Raymond Zeman negotiated
the agreement as an agent of ITD, acting on behalf of ITDH,
is also sufficient, under the prima facie standard, to
satisfy part one of the tripartite specific jurisdiction
test: that the claim underlying the litigation arise out of,
or relate to, ITDH's and ITD's forum state activities. See

163 Pleasant Street I, 960 F.2d at 1089.

-14-
14

insufficient proof of minimum contacts in 163 Pleasant Street

I, we did not address whether subjecting ITDH to the personal

jurisdiction of Massachusetts would be reasonable in light of

the Gestalt factors. Nor did we formally determine whether

ITDH was within the reach of the Massachusetts long-arm

statute. Extending our query also to include ITD, we discuss

each question in turn.

Once a court has determined that a defendant has

purposefully established minimum contacts within the forum

state, these contacts may be considered in light of certain

factors to determine whether the assertion of personal

jurisdiction would comport with "fair play and substantial

justice." Burger King, 471 U.S. at 476 (quoting

International Shoe, 326 U.S. at 320). These Gestalt factors

include: (1) the defendant's burden of appearing, (2) the

forum state's interest in adjudicating the dispute, (3) the

plaintiff's interest in obtaining convenient and effective

relief, (4) the judicial system's interest in obtaining the

most effective resolution of the controversy, and (5) the

common interests of all sovereigns in promoting substantive

social policies. 163 Pleasant Street I, 960 F.2d at 1088

(citing Burger King, 471 U.S. at 477).

Application of these five factors to the facts

before us easily yields the conclusion that the district

court's exercise of personal jurisdiction over ITDH and ITD

-15-
15

would meet International Shoe's "fair play and substantial

justice" requirement. While we do not doubt that traveling

to Massachusetts for purposes of defending this action will

place a significant burden upon ITDH and ITD, we believe that

this burden is substantially outweighed by Massachusetts'

interest in adjudicating this dispute and plaintiffs'

interest in obtaining convenient and effective relief. Cf.

Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 114

(1987) ("[O]ften the interests of the plaintiff and the forum

in the exercise of jurisdiction will justify even the serious

burdens placed upon [an] alien defendant."). In this era of

ever burgeoning health care costs, Massachusetts clearly has

a vital interest in seeing bargained-for health insurance

benefits provided to its residents. If this case is

dismissed, many plaintiffs may be forced to rely upon public

funds to help defray health care costs, which fact in turn

will place an increased financial burden upon the

Commonwealth.15 Moreover, in light of the obvious costs of

and obstacles to obtaining insurance elsewhere, the effects

upon plaintiffs of losing the benefits at issue in this

lawsuit are manifest and can hardly be overstated.

15. We note that the cogent and persuasive brief filed on
behalf of plaintiffs by the individual members of
Massachusetts' congressional delegation as amici curiae

speaks volumes about the interest of the Commonwealth in
seeing this matter adjudicated before the district court.

-16-
16

The fourth Gestalt criterion, the judicial system's

interest in obtaining the most effective resolution of the

controversy, also favors the retention of jurisdiction over

this dispute. If this case is dismissed, it is far from

clear that there will be any judicial resolution, let alone

the most effective judicial resolution, of this controversy.

Even if we assume that this action could be brought in

Scotland, the fact remains that all of the individual

plaintiffs, many of whom are disabled and/or of advanced

years, reside in Massachusetts. Moreover, it is apparent

that most of the potential witnesses reside nearer to the

seat of the district court than to wherever the case might be

tried in Scotland. Given these facts, the logistics of

bringing suit in Scotland might prove insurmountable. At any

rate, whether or not the significant logistical obstacles

could be overcome, it is obvious that efficiency

considerations weigh heavily in favor of litigating this case

in Massachusetts.

The final Gestalt factor, the common interests of

all sovereigns in promoting substantive social policies, does

not support a contrary conclusion. As an initial matter, we

note that defendants have not identified, nor can we discern,

any substantive Scottish social policy which might counsel

against an exercise of jurisdiction on the facts before us.

More importantly, however, while we are mindful of the

-17-
17

Supreme Court's admonition that courts should be "unwilling[]

to find the serious burdens on an alien defendant outweighed

by minimal interests on the part of the plaintiff or the

forum State[,]" Asahi Metal Industry, 480 U.S. at 115, we are

confident that plaintiffs' and Massachusetts' interests in

litigating this dispute before the district court, far from

being minimal, are serious enough to outweigh any such social

policy. Therefore, we conclude that the exercise of

jurisdiction over ITDH and ITD is reasonable in light of the

Gestalt factors.

Having determined that, under the prima facie

standard, plaintiffs have made a sufficient showing to pass

constitutional muster, we need now only formally assert that

which we indicated was "likely" before: plaintiffs have also

made a prima facie showing that ITDH and ITD are amenable to

suit in Massachusetts. Without question, ITDH's and ITD's

activities during the negotiation of the collective

bargaining agreement, see supra page 13, must, even under the

narrowest possible construction of the term, be construed as

a "transaction of business" within Massachusetts. Moreover,

plaintiffs' cause of action clearly arose from this

transaction of business. Thus, ITDH and ITD fall within the

reach of the Commonwealth's long-arm statute. See Mass. Gen.

Laws. Ann. ch. 223A, 3(a).

-18-
18

Before concluding, we elaborate upon why the

district court should not have construed 163 Pleasant Street

I as a mandate to dismiss ITDH and ITD on personal

jurisdiction grounds.16 We begin by reiterating that, at the

August 13, 1991, hearing, the district court's initial

personal jurisdiction determination was made at the

conclusion of ITDH's oral presentation and without

plaintiffs' input. See supra note 11. Therefore, with

regard to the question of personal jurisdiction, plaintiffs

never had a full opportunity (1) to address the court, either

orally or on paper,17 (2) to introduce further evidence, or

(3) to request discovery. As a result, the record before us

in 163 Pleasant Street I was incomplete.

Under the facts of this case, the incomplete nature

of the record prevented any sort of conclusive determination

on the personal jurisdiction issue at the time 163 Pleasant

16. In so stating, we clarify that our comment in 163

Pleasant Street I that "[i]t follows inexorably that ITD[H]'s

motion to quash the complaint for want of personal
jurisdiction should have been granted," 163 Pleasant Street

I, 960 F.2d at 1099, was not intended as a directive to the

district court, but as an assessment of the record as it

stood when the original motion to dismiss was filed.

17. We note that ITDH first moved to dismiss on personal
jurisdiction grounds on August 6, 1991, a mere seven days
before the August 13, 1991, hearing. We also note that the
fourteen day period for submitting an opposition to ITDH's
motion provided for by Rule 7.1(a)(2) of the Local Rules for
the United States District Court for the District of
Massachusetts had not yet expired when the court denied
ITDH's motion.

-19-
19

Street I was handed down. The jurisdictional deficiency

which informed the holding in our previous opinion did not

stem from either a settled factual predicate or legally

insufficient allegations, but from perceived voids in the

evidentiary landscape. See 163 Pleasant Street I, 960 F.2d

at 1090. As noted, no discovery directed at filling these

voids took place. Accordingly, 163 Pleasant Street I can

only be interpreted as holding that plaintiffs'

jurisdictional showing was insufficient to support the entry

of the injunction and contempt orders against ITDH.18 See

7-Pt. 2 James W. Moore et al., Moore's Federal Practice

65.03[3], at 65-28 (2d ed. 1989) ("A court must have in

personam jurisdiction over the party against whom the

18. To reinforce this point, we note that if, on the record
before it, the district court had decided the personal
jurisdiction issue adversely to plaintiffs without at least

affording them the opportunity to respond to ITDH's argument
and/or to request discovery, we almost certainly would have
declined to affirm the district court's judgment and held the
ruling to be an abuse of the court's discretion. Cf. Boit,

967 F.2d at 681 (refusal to defer ruling on Rule 12(b)(2)
motion until after there has been discovery on personal
jurisdiction issue can be an abuse of discretion); Surpitsky

v. Hughes-Keenan Corp., 362 F.2d 254, 255-56 (1st Cir. 1966)

(district court erred in refusing to allow a diligent
plaintiff who was a stranger to a defendant corporation
discovery on question of personal jurisdiction); see also 5A

Charles A. Wright & Arthur R. Miller, Federal Practice and
Procedure 1351 at 256-59 (2d ed. 1990) ("In particularly
complex cases, . . . it may be desirable to hold in abeyance
a decision on a motion to dismiss for lack of personal
jurisdiction. Doing so will enable the parties to employ
discovery on the jurisdictional issue, which might lead to a
more accurate judgment than one made solely on the basis of
affidavits.").

-20-
20

injunction runs."); see also 163 Pleasant Street I, 960 F.2d

at 1084 ("`Given that civil contempt is designed to coerce

compliance with the court's decree, it is logical that the

contempt order itself should fall with a showing that the

court was without authority to enter the underlying

decree.'") (quoting Willy v. Coastal Corp., 112 S. Ct. 1076,

1081 (1992)).

In sum, the district court should not have

summarily granted ITDH's and ITD's motion to dismiss.

Instead, after remand, it should have determined, on the

record then before it, whether it had jurisdiction over ITDH

and ITD. In so doing, it should have proceeded in accordance

with one of the approaches outlined in Boit. See Boit, 967

F.2d at 675-78.

III.

CONCLUSION

Because plaintiffs have made a prima facie

demonstration of every fact required to satisfy both

Massachusetts' long-arm statute and the Due Process Clause of

the United States Constitution, the district court erred in

granting the second motion to dismiss filed by ITDH and ITD.

Accordingly, we vacate the judgment of the district court and

remand this case for further proceedings.19

19. Having found that plaintiffs have made a prima facie
showing that the district court had personal jurisdiction
over the ITD companies, we need not reach the merits of

-21-
21

Vacated and remanded.

plaintiffs' argument that alternative bases for the assertion
of jurisdiction over defendants exist in this matter.

-22-
22