Jorge **AGRAMONTE GADEA,**
et al., Plaintiffs,

v.

**CITIBANK N.A., Sun Bank
of Florida, Defendants.**

Civil No. 95–2183(SEC).

United States District Court,
D. Puerto Rico.

April 7, 1997.

Antonio Bauzá–Torres, Guaynabo, PR, for Plaintiff.

Iván M. Duranr–Sierra, Bayamón, PR, José R. Cintrón–Rodríguez, Woods, Roesenbaum, Luckeroth & Pérez–González, San Juan, PR, Richard H. Bergman, Bergman & Jacobs, P.A., Miami, FL, Felipe Sanabria–Quiñones, Cancio, Rodríguez & Sanabria, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is a motion to dismiss filed by Suntrust Bank, Miami, N.A.("Suntrust")(**Docket # 30**) Upon careful consideration of the parties' arguments and the applicable law, defendant's motion to dismiss is **GRANTED**. Accordingly, plaintiffs' complaint against Suntrust Bank is **DISMISSED**. Also pending is plaintiffs' motion of February 14, 1997 requesting dismissal of defendant Citibank, South Dakota, N.A. Pursuant to Fed.Civ.P. 41(a)(2), plaintiffs' complaint against defendant Citibank, South Dakota, N.A. is hereby **DISMISSED**.

### Factual Background

In 1987, plaintiff Jorge M. Agramonte, then a resident of Cooper City, Florida, applied for a loan from Suntrust to finance the purchase of a 1987 Mercury Cougar. (Docket # 30, Defendant's Statement of Uncontested Facts, Appendix C, Application dated November 10, 1987) Pursuant to said application, Suntrust granted to coplaintiff Jorge M. Agranonte a loan for $15,365.75 on November 13, 1987. Id, Appendix D, Security Agreement–Retail Installment Contract, Dated November 13, 1987. Such loan was made in the State of Florida. Id., Appendix B, Affidavit of Manny Villaverde, ¶ 3.

Mr. Jorge Agramonte Gadea acknowledges the signature in said document. Although he signed the Security Agreement to obtain the loan from Suntrust, he acted as a cosigner, for the purpose of the loan was to enable Agramonte's son to purchase a motor vehicle. (Id., Appendix E, Deposition of Jorge Agramonte Gadea, ·p. 14, lines 4–14; p.19, lines 13–21) According to the allegations during the year 1994 plaintiff Jorge Agramonte Ga-

dea was refused credit on several institutions and/or stores opened to the public due to a negative report issued by "Equifax" a credit reporting and credit information services institution in Puerto Rico. (Plaintiffs' Complaint, ¶ 6) Plaintiff further alleges that the negative credit reports furnished and published by "Equifax" were negative by information, memos, reports and/or communications furnished, made available and published by defendants. Id., ¶ 7.

Plaintiffs allege that defendant Citibank N.A. reported a bad and delinquent account number 4271382073072 114 as belonging to plaintiff Jorge Agramonte Gadea when in fact that account did not belong to plaintiff Jorge Agramonte Gadea. Plaintiff claims that Suntrust also reported a bad and delinquent account of Jorge Agramonte Gadea account 562 755 7400001. Plaintiff Agramonte Gadea also denies that such account belonged to him. According to plaintiffs, defendants, in violation of their duties insisted on their position when they knew or should have known that such accounts did not belong to plaintiff. Id., ¶ 8, 9.

Plaintiffs add that they prepared and made available the necessary consumer dispute forms to Equifax which made them available to defendants. According to plaintiffs, defendants negligently and illegally insisted in their negative reports. Plaintiffs note that defendants had ample opportunity to make the corrections and avoid the negative impact of the report of the credit on plaintiff. Id., ¶ 11.

Plaintiffs claim that prior to the illegal negligence and incorrect report of memoranda by defendants, plaintiff Jorge Agramonte Gadea had an excellent credit rating. Such credit rating was ruined by the allegedly negligent reporting of defendants. As a result of defendants' actions, plaintiff Jorge Agramonte Gadea was denied credit by Roig Commercial Bank, Sears and the Government Development Bank. Such denial of credit led to loss of profits and damages to his business in the amount of $200,000.00 Plaintiffs Jorge Agramonte Gadea and his wife also claim pain and mental suffering from such harm to his commercial and per-

sonal reputation in the amount of $300,000. Id., ¶¶ 14, 16.

Plaintiffs filed the present complaint on September 22, 1995 (**Docket # 1**), pursuant to 28 U.S.C. § 1332, 15 U.S.C. §§ 1601, 1666(a), 1681(a), 1691(a)(2) and 31 L.P.R.A. § 5141. Defendant Suntrust answered on February 22, 1996 and on January 3, 1997 filed a motion to dismiss for lack of personal jurisdiction. (**Docket # 30**) We proceed to decide accordingly.

**Applicable Law/Analysis**

■ Suntrust argues in its motion to dismiss that it does not have sufficient minimum contacts with the forum state to justify the exercise of personal jurisdiction over it, a non-resident defendant. Suntrust is a corporation incorporated and with its principal place of business in the State of Florida. It is not authorized to do business in the Commonwealth of Puerto Rico. (Statement of Uncontested Facts, Appendix A, Certification issued by Department of State of the Commonwealth of Puerto Rico, dated Dec. 24, 1996). It does not keep branches in Puerto Rico nor grants loans to residents of Puerto Rico. (Id., Appendix B, Sworn Statement by Manny Villaverde)

Plaintiffs seek to distinguish the present case from *U.S.S. Yachts Inc. v. Ocean Yachts Inc.* 894 F.2d 9 (1st Cir.1990). Plaintiff states that the tort by Suntrust was "the notification of delinquent payments by plaintiff when in fact plaintiff was not the borrower of the loan, no delinquency occurred and no notification of late payments was made to plaintiff." (Docket # 38, p. 4) Plaintiffs argue that exercise of personal jurisdiction over defendant in the present is appropriate pursuant to the "tortious act" provision of Puerto Rico's Long–Arm Statute, Rule 4.7(2) of Puerto Rico Civil Procedure, since "the damages due to the incorrect and false information by SunBank were produced in the Commonwealth of Puerto Rico." (Docket # 38, p. 2, ¶ 11)

We must examine the appropriateness of the above cited case to the controversy before us. The case of *U.S.S. Yachts* involved a yacht dealer who filed a breach of contract claim in Puerto Rico against a nonresident manufacturer, claiming unjust termination of

a dealership agreement. The district court dismissed for lack of personal jurisdiction. Upon appeal, the First Circuit affirmed the decision noting that the letters sent by non-resident yacht manufacturer to the yacht dealer in Puerto Rico—extending dealership to Puerto Rico, granting commission credit, and canceling the dealership—were not sufficient contacts to justify the exercise of personal jurisdiction over defendant in compliance with the tenets of due process.

Plaintiffs in *U.S.S.Yachts* also invoked Puerto Rico's "tortious act" provision, to obtain personal jurisdiction over the non-resident defendant. Such statute reads, in pertinent part:

(a) "Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:

(1) transacted business in Puerto Rico personally or through an agent; or

(2) **participated in tortious acts within Puerto Rico personally or through his agent . . .**" P.R. Laws Ann. Tit. 32, App. III, Rule 4.7(a). (Emphasis added)

The Court in *U.S.S. Yachts* held that "[e]ven if [plaintiff] Ocean allegedly participated in tortious act within Puerto Rico for purposes of Puerto Rico's long-arm statute, the assertion of personal jurisdiction over Ocean by the district court would offend due process." *U.S.S. Yachts, Inc.* 894 F.2d at 11. In that case, it held that plaintiffs' business correspondence to the defendant in Puerto Rico regarding the dealership agreement were not sufficient minimum contacts to support the exercise of personal jurisdiction without offending due process.

Thus, we must engage in a "minimum contacts" analysis in the present case. In other words, we must determine if defendant's communication of allegedly erroneous information to the various credit agencies in Puerto Rico would constitute minimum contacts within the permissible confines prescribed by due process.

■ The complex issue of personal jurisdiction relates to a court's power over the defendant. There are two types of personal jurisdiction: general and specific. *Pritzker v. Yari,* 42 F.3d 53, 59 (1st Cir.1994). General jurisdiction exists when the lawsuit is not directly based on the defendant's contacts with the forum, but when the defendant has engaged in activity in the forum which is unrelated to the suit and which is systematic and continuous. *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 144 (1st Cir.1995)(quoting *United Elec. Workers v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992) (*Pleasant Street I* )). Whenever defendants challenge the Court's in personam jurisdiction, the plaintiff bears the burden of proving that jurisdiction lies in the forum state. *Sawtelle v. Farrell,* 70 F.3d 1381 (1st Cir.1995). In the case before the Court, plaintiffs have not demonstrated that defendant Sun Trust has engaged in continuous and systematic activity in Puerto Rico. Thus, general jurisdiction is lacking.

The courts usually employ a three-prong test to determine the existence of the other type of jurisdiction, specific personal jurisdiction:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable. *Foster–Miller,* 46 F.3d at 144. (quoting *Pleasant Street I,* 960 F.2d at 1089). This test of the defendant's minimum contacts is "highly idiosyncratic" and must be made on a case-by-case basis. *Pritzker,* 42 F.3d at 60.

■ Considering all of plaintiffs' assertions as true, that is, that "the damages due to the incorrect and false information by SunBank [Suntrust] were produced in the Commonwealth of Puerto Rico," plaintiffs may make a colorable argument that their claim directly arose out of, or related to, the defendant's forum-state activities. However, there is no evidence to make a colorable

claim that the defendant Suntrust purposefully availed itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. It is well-settled law that plaintiffs have the burden to establish personal jurisdiction. *United Electrical Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1090.

Even assuming arguendo, that plaintiffs could successfully allege that defendant's referral of false information to third parties in Puerto Rico generated minimum contacts, plaintiffs still must show that such exercise of personal jurisdiction would comport with traditional notions of "fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). Thus, we must engage in the gestalt factors analysis. In order to properly answer that question, Courts have devised several "gestalt" factors:

1) the defendant's burden of appearing, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most effective resolution of the controversy, and 5) the common interests of all sovereigns in promoting substantive social policies. *Burger King [v. Rudzewicz]*, 471 U.S. [462] at 477, 105 S.Ct. [2174] at 2184 [85 L.Ed.2d 528 (1985)].

(cited in *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996))

The purpose of the gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close. In such cases, the gestalt factors may tip the constitutional balance. *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 209 (1st Cir.1994). Accordingly, the First Circuit Court has adopted a sliding scale approach: "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* at 210. Conversely, "an especially strong show-

ing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." *Id.* (Citing *Donatelli v. National Hockey League*, 893 F.2d 459, 465 (1st Cir.1990)).

Plaintiffs can make a colorable claim that defendant's ephemeral contacts with Puerto Rico—communicating the delinquent loan to some Puerto Rican companies—were related to plaintiffs' cause of action. However, the Court does not discern any purposeful availment by defendant Suntrust of the privilege of conducting activities in the forum state. Plaintiffs does not present any evidence that defendant sought to generate activities, commercial or otherwise in Puerto Rico through their communications with Puerto Rico about plaintiffs' allegedly delinquent loan. In view of plaintiffs' feeble showing on the "relatedness" and "purposeful availment" prongs, defendant's argument that exercise of personal jurisdiction is unreasonable seems more compelling. We discuss the gestalt factors.

### Burden of Appearance

The first factor-the burden on the defendants to appear in the forum—permits the court to prevent harassing litigation. *Nowak*, 94 F.3d at 718. It will almost always be burdensome for a defendant to defend itself in a foreign jurisdiction. *Pritzker*, 42 F.3d at 64. In order for this factor to weigh against the court's jurisdiction, therefore, it must be shown that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way." *Id.* In the case before the Court, it will be burdensome and inconvenient for defendant to litigate in Puerto Rico. The Court notes, however, that it would be burdensome and inconvenient for *any other* defendants based outside of Puerto Rico to defend a suit in this forum. We acknowledge that defendant has its principal place of business in Florida. The loan was transacted in Florida and defendant does not have any agents in Puerto Rico. On the other hand, there is no evidence that the lawsuit was filed to harass the defendant, and plaintiffs may have a colorable claim on the merits. Since there are no unusual circumstances that would create severe prejudice pursuant to the exercise of personal jurisdiction over defendant, this fac-

tor weighs slightly in favor of the court's exercise of jurisdiction.

### Interest of the Forum

 The second factor examines the forum's interest in adjudicating the dispute. *Pleasant Street I*, 960 F.2d at 1088. The purpose of this factor is not to compare the forum's interest with that of another jurisdiction, but to measure the extent to which the forum has an interest at all. *Foster–Miller*, 46 F.3d at 151. A forum state has a demonstrable interest in exercising jurisdiction over a defendant who has caused a tortious injury within the state. *Sawtelle*, 70 F.3d at 1395. In the case before the Court, the alleged tortious act in which plaintiffs suffered injuries had effects within Puerto Rico, that is, the loss of business opportunities due to the wrongful reporting. However, the loan transaction occurred in Florida, and the main claims revolve around a federal claim. Although this district court would most certainly seek to promote the uniform enforcement of federal law, it fails to discern a particularly compelling state interest in the vindication of plaintiffs' claims. Thus, this factor tilts against the exercise of personal jurisdiction.

### The Plaintiffs' Convenience

[12, 13] The third gestalt factor is the plaintiff's interest in obtaining effective and convenient relief. *Pleasant Street I*, 960 F.2d at 1088. The plaintiffs' choice of a forum should be given a large degree of deference with regard to the issue of their own convenience. *Sawtelle*, 70 F.3d at 1395. In the present case, plaintiffs are Puerto Rico residents and they have chosen to litigate their claim here. It would certainly be more convenient for them to litigate their claim here in Puerto Rico. Thus, this factor weighs in favor of the Court's exercising jurisdiction over defendant.

### The Administration of Justice

 The fourth factor is the judicial system's interest in obtaining the most efficient resolution of the controversy. *Pleasant Street I*, 960 F.2d at 1088. Defendant is located in the state of Florida. The allegedly tortious act occurred in Puerto Rico. There is nothing in the record to suggest that the Courts of Florida, where the loan was arranged, could not act in a fair, impartial and efficient manner in the processing of this case. In *Tak How*, the Court expressed grave concern over Hong Kong's political instability and the undue burden on plaintiffs in obtaining transportation and interpreters were the case to he tried in Hong Kong. There are no similar concerns here. Accordingly, this factor counsels against the exercise of jurisdiction. *See Sawtelle*, 70 F.3d at 1395.

### Pertinent Policy Arguments

 The final gestalt factor is the common interests of all involved sovereigns in promoting substantive social policies. *Pleasant Street I*, 960 F.2d at 1088. A prominent policy consideration for this factor is the state's ability to provide its residents with a convenient forum to redress injuries caused by foreign actors. *Sawtelle*, 70 F.3d at 1395.

 In the case before the Court, Puerto Rico has the policy interest of affording plaintiffs with a forum to bring their Puerto Rico law claims against defendant, although the attenuated character of the contacts between Puerto Rico and the defendants makes the defendant Suntrust's forum in Florida a more plausible alternative. This factor does not favor or counsels against the exercise of personal jurisdiction.

Having considered all the gestalt factors, defendant has made a strong showing that exercise of personal jurisdiction is unreasonable. In view of the fact that the "purposeful availment" test counsels strongly against the exercise of jurisdiction over defendants, and the "relatedness" analysis barely favors personal jurisdiction, the analysis of the gestalt factors, taken as a whole, indicate that exercise of personal jurisdiction over defendant is unreasonable.

Pursuant to the above discussion, defendant's motion to dismiss is hereby **GRANTED**. (**Docket** # 30) Accordingly, plaintiffs' complaint against defendant Suntrust is **DIS-**

MISSED. Judgment shall follow accordingly.

SO ORDERED.